## LOEB v. TRUSTEES OF COLUMBIA TP., HAMILTON COUNTY, OHIO.

### (Circuit Court, S. D. Ohio, W. D. January 9, 1899.)

### No. 5.099.

1. **JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE OF MUNICIPAL BONDS.**
   A civil township, made a body politic and corporate by the state statutes and authorized to issue negotiable bonds, is a corporation within the meaning of the federal judiciary act of 1888, and may be sued in a federal court on bonds so issued by an assignee who is a citizen of another state.

2. **SAME—FOLLOWING STATE DECISIONS—RETROACTIVE EFFECT.**
   While under the constitution of Ohio as now interpreted by its supreme court an act of the legislature authorizing the trustees of a particular township to improve a designated road is invalid, yet, that court having for many years sustained the validity of such legislation, a federal court will not give a retroactive effect to its later decisions by holding invalid bonds issued during such time by a township under such an act and which were purchased and are owned by a citizen of another state.

3. **STATUTE—EFFECT OF PARTIAL INVALIDITY—SEPARABLE PROVISIONS.**
   Where an act authorizing township trustees to improve a road provided that the entire cost of the improvement should be assessed against abutting property, which was in accordance with a general legislative policy, as evidenced in other similar acts, the assessment provision must be presumed an essential feature of the act, without which it would not have been enacted, and the invalidity of such provision will render the entire act invalid.

4. **SAME—CONSTITUTIONALITY—WHO MAY ATTACK.**
   A township may attack the validity of a legislative act under which it has issued bonds, though the provision which it is claimed renders the act unconstitutional as a whole is for the benefit of the township.

5. **CONSTITUTIONAL LAW—DUE PROCESS OF LAW — STATUTE AUTHORIZING SPECIAL ASSESSMENTS.**
   A statute providing for the assessment of the entire cost of a public improvement on abutting property, by the front foot, without reference to special benefits, rests the assessment on an illegal basis and is void as in contravention of the provision of the fourteenth constitutional amendment that private property shall not be taken without due process of law.

This is an action by Louis Loeb against the trustees of Columbia township, Hamilton county, Ohio, on bonds issued by the township. On demurrer to petition.

C. Hammond Avery, for complainant.
Burch & Johnson, for defendants.

THOMPSON, District Judge. This case is submitted to the court on demurrer to the petition. The demurrer alleges that the petition

does not state facts sufficient to constitute a cause of action. The points made in argument in support of the demurrer are: (1) The petition does not show that the plaintiff, Louis Loeb, is the original holder of the bonds sued on, and if he be an assignee or subsequent holder thereof he is not entitled to maintain this action because the bonds are payable to bearer, and were not made by a corporation. (2) The act of the general assembly of the state of Ohio under and by virtue of which the bonds were issued contravenes the provisions of the constitution of the state of Ohio, and therefore the bonds are invalid. (3) The said act contravenes the provisions of the constitution of the United States, and therefore the bonds are invalid.

1. The first point is predicated on the assumption that the township of Columbia is not a corporation within the meaning of the act of congress of August 13, 1888 (1 Supp. Rev. St. 612), one provision of which reads as follows:

"Nor shall any circuit or district court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder, if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

And the argument in support of this proposition assumes that the corporations contemplated by this law must have all the powers and attributes of private corporations, and authorities are cited to show that the quasi corporation known as the "Township of Columbia" is wanting in this respect. But section 1376 of the Revised Statutes of Ohio provides that:

"Every civil township heretofore or hereafter lawfully laid off and designated, is declared to be, and is hereby constituted, a body politic and corporate, for the purpose of enjoying and exercising the rights and privileges conferred upon it by law: it shall be capable of suing and being sued, pleading and being impleaded."

And the supreme court of Ohio has held that:

"For township liabilities an action lies against the trustees, and it is better to sue them without giving their individual names." Harding v. Trustees, 3 Ohio, 227; Trustees v. Miller, 5 Ohio, 184; Wilson v. Trustees, 8 Ohio, 174.

In Lincoln Co. v. Luning, 133 U. S. 530, 10 Sup. Ct. 363, it is said:

"With regard to the first objection, it may be observed that the records of this court for the last thirty years are full of suits against counties, and it would seem as though by general consent the jurisdiction of the federal courts in such suits had become established."

Again:

"The power to contract with citizens of other states implies liability to suit by citizens of other states."

Clearly Columbia township is a corporation "for the purpose of enjoying and exercising the rights and privileges conferred upon it by law," and it is capable of being sued upon liabilities which, by law, it is authorized to incur. The demurrer cannot be sustained upon this ground.

2. It is claimed that it was not within the competency of the general assembly to "authorize the trustees of a particular township

to widen and extend a certain road in a prescribed manner; that the exercise of such power over the affairs of a township is administrative in character, and not legislative, and that the act in question is for such reason invalid." In State v. Franklin Co. Com'rs, 35 Ohio St. 458. paragraphs 2, 3, and 4 of the syllabus read as follows:

"(2) An act providing for the improvement of a designated county road is local in its nature, and not in conflict with article 2, § 26, of the constitution, which provides that 'all laws of a general nature shall have a uniform operation throughout the state.'

"(3) An act requiring county commissioners to cause a designated road to be improved, and to levy a tax to defray the expense thereof, where the road is open to the public, is not invalid for want of power in the general assembly to pass it.

"(4) An act providing 'that the commissioners of Franklin county be, and they are hereby, authorized and directed to levy * * * a special tax not to exceed,' etc., to improve a county road, is a mandatory statute, and the commissioners may be compelled by mandamus to obey its provisions."

The act under consideration in that case, which was declared to be constitutional, reads as follows:

"Section 1. That the commissioners of Franklin county be, and they are hereby, authorized and directed to levy, at their June session, A. D. 1877, a special tax not to exceed the amount of the estimate of the engineer as hereinafter provided, for the purpose of building, grading, and graveling or macadamizing the road from South High street, in the city of Columbus, along the Green Lawn avenue road to its terminus in the old Chillicothe road.

"Sec. 2. The said commissioners shall cause a survey and estimate of said road to be made by some competent engineer, and the letting for said improvement provided for in section one shall not exceed the amount of such estimate after expenses are paid; and the commissioners in these proceedings shall be governed by the laws now in force, so far as they may be applicable, relating to their duties in regard to free turnpike roads.

"Sec. 3. This act shall take effect and be in force from and after its passage."

74 Ohio Laws, p. 472.

The answer of the commissioners contains the following averments:

"This board does not recognize the necessity of said improvement. This improvement consists in part, in the building, grading, and graveling or macadamizing of a street within the corporate limits of the city of Columbus. It will not be of a general benefit, but will be of local benefit and interest only to those using Green Lawn Cemetery as a burial place, to those citizens who own lands contiguous to or in the vicinity of said road, and to such others as may prefer to use this road to other roads leading in the same general direction. The board do not deem it just to make such improvement at the expense of the whole county, and do not believe that the legislature intended, by the act set forth in the writ, to compel this board to make said improvement whether the doing so met with the approval of its judgment or not. The board regards said act of the legislature to be of doubtful constitutionality, if it should be construed to intend that the board shall make said improvement, and shall levy a tax to pay the same upon the whole county." 35 Ohio St. 460.

And counsel for the commissioners say:

"The respondents claim that the law as passed is unconstitutional and void, and that they are not bound to act under it, for the following reasons: * * * (2) The general assembly cannot constitutionally compel them, without their consent, nor compel the people of Franklin county, acting through them as their representatives, to make an improvement which is of local use solely. (3) Under the constitution and laws of Ohio the board of county commissioners are to be the sole judges of the necessity of a merely local improvement. (4) The improvement in question is such a local improvement, and is not of

such a public character as to give the general assembly power over it." Id., 463.

The court say, at page 466:

"The action is to compel the commissioners of Franklin county to levy a tax 'for the purpose of building, grading, and graveling or macadamizing' a road, commencing in the city of Columbus and intersecting a public road near the city. * * * The tax is provided for by an act passed in 1877, set forth in the statement of the case, but the commissioners decline to make the improvement, on several grounds, which we will now consider. * * * (3) The power of the legislature to pass a mandatory statute, requiring the commissioners to levy the tax and improve the road in question, is denied by the defendant. The only provision which the constitution contains with respect to the county commissioners is the following: 'The commissioners of counties, the trustees of townships, and similar boards, shall have power of local taxation as may be prescribed by law.' Article 10, § 7. Manifestly this is no limitation on the power of the general assembly; and the inquiry therefore is as to the extent of such power. That it is only legislative is conceded; but that is undeniably a very broad power, and includes, generally, the right to direct, in invitum, the construction and repair of public highways, and the levy of taxes to defray the necessary expenses thereof. That the power is liable to great abuse is denied by no one, but the responsibility, as well as the power, rests with the legislature. Many cases may be found which go further in support of this principle than we might be willing to go. People v. Flagg, 46 N. Y. 401; City of Philadelphia v. Field, 58 Pa. St. 320. See Lima v. McBride, 34 Ohio St. 338."

This decision was rendered in 1880, and was followed by numerous acts of the general assembly directing mandatorily the improvement of designated roads, streets, and avenues in various parts of the state. These acts contained directions, more or less specific, for the improvement of such roads, etc., by widening, extending, grading, graveling, macadamizing, etc., and provided for the assessment of the expense of the improvement wholly or in part on the abutting lands. The decision was recognized by the legislature as authority for the acts construed in the cases below cited. In Weston v. Commissioners, 6 Ohio Cir. Ct. R. 641, the act under consideration was entitled "An act to extend, widen, grade, gravel, macadamize, and improve Erie avenue, in Columbia township, Hamilton county, Ohio," and provided for the assessment of the cost and expense of the improvement on the "lots and lands situated within one mile on each side thereof." The commissioners of Hamilton county were "authorized and required" to make the improvement. 87 Ohio Laws, p. 577. The court say the claims of the plaintiffs are substantially these:

"That said act in its operation is most unequal and unjust; 'that it was passed without the request, knowledge, or consent of the plaintiffs, and that its passage was procured by and in the interest of persons who own a large quantity of ground outside of the assessing district, but within a radius of one mile from the eastern terminus of the avenue; * * * and that it was the object of said persons so procuring the passage of said act to enhance the value of these lands, and to enrich themselves by having this expense saddled on the plaintiffs and other victims in the assessing district, and to make their lands and farms suitable for building lots;' and the petition alleges that 'they succeeded in their enterprising endeavor.'"

And the court proceed to say:

"But it cannot be denied that if the allegations of the petition hereinbefore quoted, as to the operation and effect of this statute in this respect, and as to the means used to bring about its passage, are true, great injustice has been

done to the plaintiffs, at least, in this case.   Indeed, there are strong grounds to believe that special legislation like this, of a purely local character, brought about by the efforts of a few persons financially interested therein, whereby it is made obligatory upon the commissioners of a county to make a certain local improvement, and to assess the cost thereof on property within a certain district, or to put the cost upon the general duplicate, is open to very grave objections.   But if, in addition to this, lands specially benefited, and adjacent to the improvement, are studiously exempted from assessment therefor, and the burden is imposed on others further removed therefrom, and not so much benefited, such legislation is essentially vicious, and courts will not be eager to enforce a statute open to such objections."

The court, nevertheless, upon the authority of State v. Franklin Co. Com'rs, 35 Ohio St. 458, held the law to be constitutional.   The decision sustaining the law was affirmed by the supreme court.   No opinion was delivered on behalf of the majority of the supreme court, but Judges Minshall and Spear expressed their dissent as follows:

"It is not competent to the legislature to create an assessment district in a county or township for the making or the improvement of a highway, and require the improvement to be made without any discretion in the local authorities or the people within the district.   The legislature, in our opinion, does not possess such administrative powers.   The case of State v. Franklin Co. Com'rs, 35 Ohio St. 458, is bad law, and should be overruled." 30 Wkly. Law Bul. 291.

In State v. Columbia Tp. Trustees, 8 Ohio Cir. Ct. R. 691, the act in question in the case at bar was under consideration, and the court say:

"It is further objected that the general assembly has not the right to pass such a statute requiring county commissioners or township trustees, without giving them any discretion in the matter, to construct such an improvement as this, and assess the cost of its construction on abutting property.   We have had occasion heretofore to express our doubts as to the propriety or expediency of such legislation.   But our understanding is that the constitutionality of such acts has been maintained by the decisions of the supreme court in 35 Ohio St. 458, and practically in the Weston Case above referred to, decided by that court, as reported in 30 Wkly. Law Bul. 291, affirming the decision of this court in the Erie Avenue Case.   It is true that the authority of these cases is weakened by the fact that three of the six judges now composing the supreme court have expressly and forcibly stated in dissenting opinions that such power does not exist, and that the decision in 35 Ohio St. 458, is bad law, and should be overruled.   But it has not as yet been overruled by the court, and, whatever ground there may be to suppose that when the question is again submitted to it it may be done, in our judgment, it is not the duty of this court to hold that such legislation is unconstitutional."

In Hamilton Co. Com'rs v. State, 50 Ohio St. 653, 35 N. E. 887, the act there under consideration was entitled:

"An act to authorize and direct the commissioners of Hamilton county to widen and improve the Montgomery road from the north corporation line of Cincinnati to the Plainfield road, and for other purposes."

And the court held that:

"That clause of the act which assumes to authorize the councils of the villages of Norwood and Pleasant Ridge to nominate and recommend to the commissioners two freeholders to act as trustees in the making of the contemplated improvement is an attempt to confer upon such municipalities corporate power, and is in conflict with section 1 of article 13 of the constitution, which provides that, 'the general assembly shall pass no special act conferring corporate power.' "

Judge Spear, in delivering the opinion, says, on page 658, 50 Ohio St., and page 889, 35 N. E.:

"Thus is presented a project for an extensive road improvement to be made under a special law, by county commissioners, without notice to property owners liable for assessments, or opportunity for a hearing, involving an outlay, stated by counsel, and not controverted, to amount to $800,000, the work to be of a character usually made by municipalities under authority of general laws, after full notice to those to be affected, and full opportunity to be heard."

Judge Minshall, speaking for himself and Judge Burket, said:

"I concur in the judgment that the act is invalid on the ground stated in the opinion, and for the further reason that it is not competent to the legislature to enact a statute by which it is directed that a certain road shall be laid out and improved in a specified manner, and the cost assessed upon the abutting property holders, without any discretion in the local authorities or desire on the part of those to be assessed. An act of this kind is not properly a law; it is an order made in the exercise of a power that is not legislative in character. It belongs under our system of government to administrative officers, such as township trustees, county commissioners, and officers and boards possessing similar functions. * * * It is a usurpation of power not conferred on the legislature, and cannot be checked too soon."

It will be seen that all these decisions assume that the right of the legislature to pass such acts was declared by the supreme court in State v. Franklin Co. Com'rs, and they each follow that case, notwithstanding the dissent of a minority of the supreme court and the expression of dissatisfaction by the judges of the circuit court. All these decisions were rendered prior to the issuing of the bonds sued on in the case at bar. Since the issuing of these bonds State v. Franklin Co. Com'rs has been reversed. The second paragraph of the syllabus in that case has been reversed by Hixson v. Burson, 54 Ohio St. 470, 43 N. E. 1000, and the third and fourth paragraphs thereof by State v. Commissioners, 54 Ohio St. 333, 43 N. E. 587. The first paragraph of the syllabus in State v. Commissioners reads as follows:

"It is not competent to the general assembly to authorize the commissioners of a particular county to widen, extend, and improve a certain road in a prescribed manner, one half the costs and expenses to be assessed on lands within a prescribed limit, according to benefits, and the other half to be levied on the general taxpayers of the county, without the request or consent of any of the parties to be assessed. The exercise of such power over the affairs of a county is administrative in character, and not legislative; and the act is, for such reason, invalid."

Judge Minshall, in delivering the opinion, after stating the grounds upon which the act is held to be invalid as set forth in the first paragraph of the syllabus, adds:

"There is still another ground on which this statute is, in my opinion, clearly invalid. The location and construction of public roads is a subject of a general nature, and should therefore be regulated by general laws, uniform in operation throughout the state (Const. art. 2, § 26), and have always until recently been so treated. But as this question is presented in a number of cases now pending in this court, it is not now passed on by the court; nor are my associates in any way bound by what is here said. The points decided are expressed in the syllabus."

In Hixson v. Burson the first and second paragraphs of the syllabus read as follows:

"(1) Under section 26 of article 2 of the constitution, the constitutionality of an act is determined by the nature of its subject-matter, its operation and effect, and not alone by its form.

"(2) The act of May 16, 1894, entitled 'An act to authorize the county commissioners to provide for the construction, improvement and repair of public highways' (91 Ohio Laws, p. 759), is unconstitutional in this: that its subject-matter is general, while its operation and effect are local. The second syllabus of State v. Franklin Co. Com'rs, 35 Ohio St. 458, is overruled."

Under these decisions it is clear that the act of the general assembly under which the bonds sued on in this case were issued is unconstitutional, and the question now is whether these decisions shall have retroactive effect so as to invalidate the bonds. The law upon this question has been definitely settled by the supreme court in the cases of Douglass v. Pike Co., 101 U. S. 677, and Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10. In Douglass v. Pike Co. the court say (pages 686, 687), quoting from Rowan v. Runnels, 5 How. 134:

"Undoubtedly this court will always feel itself bound to respect the decisions of the state courts, and, from the time they are made, regard them as conclusive in all cases upon the construction of their own laws. But we ought not to give them a retroactive effect, and allow them to render invalid contracts entered into with citizens of other states which, in the judgment of this court, were lawfully made. * * * The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment."

And in Burgess v. Seligman the court say (pages 33, 34, 107 U. S., and page 21, 2 Sup. Ct.) that:

"We do not consider ourselves bound to follow the decision of the state court in this case. When the transactions in controversy occurred, and when the case was under the consideration of the circuit court, no construction of the statute had been given by the state tribunals contrary to that given by the circuit court. The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled it is the right and duty of the federal courts to exercise their own judgment, as they also always do in reference to the doctrines of commercial law and general jurisprudence. So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted

by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts. As, however, the very object of giving to the national courts jurisdiction to administer the laws of the states in controversies between citizens of different states was to institute independent tribunals which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

See, also, a decision of the circuit court of appeals of this circuit in Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296, where the doctrine of the case of Burgess v. Seligman is applied.

Coming to the case at bar, we find that from the time of the decision of the supreme court of Ohio made in 1880, in the case of State v. Franklin Co. Com'rs, supra, the doctrine that, under the constitution of Ohio, the general assembly had power by legislative enactment to require boards of county commissioners and township trustees to improve a designated public road, and provide for the expense of the improvement by the levy of a tax or the assessment of the property, without the request or consent of the parties to be taxed or assessed, was maintained until the decision of the same court made in 1896 in the case of State v. Commissioners, supra. It was questioned from time to time, as shown by the cases cited above, but each time the supreme court affirmed the doctrine, and continued to do so until long after the issuing of the bonds sued on. It was suggested in argument that this question was not decided in the case of State v. Franklin Co. Com'rs. I think it was; but, let that be as it may, the courts of the state, common pleas, circuit, and supreme, assumed that it was, and followed that case, as authority for sustaining the constitutionality of acts like the one in question, and the dissenting judges refer to it as authority for the doctrine which they condemned. The holding of the court in State v. Franklin Co. Com'rs, as set forth in the second paragraph of the syllabus, that "an act providing for the improvement of a designated road is local in its nature, and not in conflict with article 2, § 26, of the constitution, which provides that 'all laws of a general nature shall have a uniform operation throughout the state,'" stood almost without question until the decision in the case of Hixson v. Burson, supra, which was rendered long after the issuing of the bonds sued on. I hold, therefore, upon the authority of Douglass v. Pike Co. and Burgess v. Seligman, supra, that the recent decisions of the supreme court of Ohio which declared laws such as the one under consideration to be in conflict with the constitution of Ohio cannot to be given retroactive effect so as to invalidate these bonds, and the demurrer cannot be sustained upon that ground.

3. Section 3 of the act under consideration provides that:

"The trustees shall receive reasonable compensation for their services, which, * * * with all costs and expenses of constructing said improve-

ment together with the interest on any bonds issued by the trustees for the same, shall be levied and assessed upon each front foot of the lots and lands on each side of said Williams avenue and the termini mentioned in section 1 hereof." 90 Ohio Laws, p. 251.

It is claimed that the assessment on the abutting lands of the entire damages awarded the owners thereof, together with the costs and expenses of the condemnation proceedings, is the taking of private property without due process of law, contrary to the fourteenth amendment of the constitution of the United States. In answer to this proposition the defendant claims: (1) There is nothing in the act which on its face shows that the assessment against every owner will be greater than the damages awarded him in the condemnation proceedings. (2) That, while the abutting landowners may complain of the assessment, the township has no right to complain of it, as it is a provision for the benefit of the township as against the abutters. (3) If that part of the act which provides for the assessment should be found to be invalid, yet the remainder of the act would be unaffected thereby, and the debt of the township for the moneys borrowed on the bonds would remain a valid and enforceable obligation against the township.

Taking these claims in inverse order I do not think the third point can be sustained. The rule is that:

"A statute may be invalid in part by reason of some provision being repugnant to the constitution, and valid as to the residue, where it appears that the invalid part is an independent provision, not in its nature and connection essential to the other parts of the statute, nor so related to the general purpose of the statute as to warrant the conclusion that the legislature would have refused to adopt it with the invalid part stricken out." Gager v. Prout, 48 Ohio St. 109, 26 N. E. 1016.

I think it is an essential part of the general purpose of the act in question that the expense of the improvement shall be borne by the abutting landowners, and I do not believe that the legislature would have enacted the law with the assessment clause stricken out. The assessment clause is in line with the general legislative policy, as evidenced by many acts, providing for similar improvements, passed since 1880. It is a part of the general purpose of the act to make the improvement at the expense of those presumed to be most benefited thereby, to wit, the abutting landowners, and it is not to be assumed that the legislature would have passed the law without some special provision requiring them to bear that expense. It cannot be said, therefore, that the assessment clause of this act is separable from the other provisions thereof, in the sense that the general purpose of the act could be carried out if that clause were omitted therefrom. Bowles v. State, 37 Ohio St. 35. If, however, the law should be held to be not in contravention of the constitution of the United States, if the assessment clause should be held valid, then the failure of the township for any cause to collect the assessment against the abutting lands would not discharge the debt incurred by the township in putting forth these bonds, or lessen the obligation of the township to pay it. The payment of the debt, if incurred under a constitutional law, could not be defeated by the failure of the township to realize from the assessment sufficient

money with which to pay it. In such an event the township would be required to provide the necessary moneys by a general tax upon all the property of the township. State v. Commissioners, 37 Ohio St. 526.

I do not think the second point made by the defendant is well taken. If the law as a whole be unconstitutional, any one may raise the question. If as a whole it is unconstitutional, it is a nullity; it is not a law, and no one is bound by it. Town of South Ottawa v. Perkins, 94 U. S. 267.

The first point made by the defendant, that "there is nothing in the act which on its face shows that the assessment against every owner will be greater than the damages awarded him in the condemnation proceedings," is covered by the recent decision of the supreme court of the United States in the case of the Village of Norwood v. Baker, 19 Sup. Ct. 187, in which the court say:

"We have seen that by the Revised Statutes of Ohio relating to assessments the village of Norwood was authorized to place the cost and expense attending the condemnation of the plaintiff's land for a public street on the general tax list of the corporation (section 2263); but if the village declined to adopt that course it was required by section 2264 to assess such cost and expense 'on the abutting and such adjacent and contiguous or other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the front foot of the property bounding and abutting upon the improvement'; while, by section 2271, whenever any street or avenue was opened, extended, straightened, or widened, the special assessment for the cost and expense, or any part thereof, 'shall be assessed only on the lots and lands bounding and abutting on such part or parts of said street or avenue so improved, and shall include of such lots and lands only to a fair average depth of lots in the neighborhood.' It thus appears that the statute authorizes a special assessment upon the bounding and abutting property by the front foot for the entire cost and expense of the improvement, without taking special benefits into account. And that was the method pursued by the village of Norwood. The corporation manifestly proceeded upon the theory that the abutting property could be made to bear the whole cost of the improvement, whether such property was benefited or not to the extent of such cost. It is said that a court of equity ought not to interpose to prevent the enforcement of the assessment in question, because the plaintiff did not show nor offer to show by proof that the amount assessed upon her property was in excess of the special benefits accruing to it by reason of the opening of the street. This suggestion implies that if the proof had showed an excess of cost incurred in opening the street over the special benefits accruing to the abutting property a decree might properly have been made enjoining the assessment to the extent simply that such cost exceeded the benefits. We do not concur in this view. As the pleadings show, the village proceeded upon the theory, justified by the words of the statute, that the entire cost incurred in opening the street, including the value of the property appropriated, could, when the assessment was by the front foot, be put upon the abutting property, irrespective of special benefits. The assessment was by the front foot and for a specific sum representing such cost, and that sum could not have been reduced under the ordinance of the village, even if proof had been made that the costs and expenses assessed upon the abutting property exceeded the special benefits. The assessment was in itself an illegal one, because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was, therefore, the only appropriate one."

All that is said by the supreme court in the Baker Case is equally applicable to the case at bar, and, upon the ground that the law under which the bonds sued on were issued contravenes the four-

teenth amendment to the constitution of the United States, which provides that private property shall not be taken without due process of law, the demurrer to the petition in this case will be sustained.