SOMMERYILLE, J.
This is a petitory action, brought by plaintiff against defendant to recover the E. % of the S. AV. %> and the S. W. % of the S. E. A4, and the pine timber on the N. W. A4 of the S. E. 14 > all in section 1, township 10 north, range 5 west, Winn parish, La. Plaintiff claims title by mesne conveyances from the New Orleans Pacific Railway Company, which was granted the land by the Congress by Act of March 3, 1871, c. 122, 16 Stat. 579, and by a grant made to said company March 3, 1885, in lieu of the original grant; which land was transferred by it, the company, November 20, 1886, to Jay Gould, trustee. It was subsequently transferred by the heirs of Gould to the Winn Land & Lumber Company; then to the Minden Lumber Company; which company transferred it to plaintiff.
Plaintiff further sets up in its petition that in the event the defendant claims title as an actual settler, or the assignee of an actual settler, under the proviso of the second section of the Acts of Congress of February 8, 1887, c. 120, 24 Stat. 391, that it de *372 nies that defendant was an actual settler, or the heir or assignee of an actual settler; that the land in question was granted to the New Orleans Pacific Railway Company as indemnity land, under the terms of the act of Congress of March 3, 1871, and that the proviso in section 2 of the act of February 8, 1887, applies only to the grant of place lands, and not to lieu or indemnity lands; that defendant did not bring suit to annul the patent issued to the railway company within five years after the passage of the act of Congress of March 2, 1896; that defendant’s claim is prescribed; that the land was sold before the passage of the act of February 8, 1887, and that the proviso in section 2 of said act cannot operate retrospectively ; as it. would divest vested rights without due process of law, and impair the obligations of a contract.
Defendant answered, denying plaintiff’s title, and alleging: That the act of March 3, 1871, was never complied with by the New Orleans, Baton Rouge & Vicksburg Railroad Company, or its assign, the New Orleans Pacific Railway Company, and that the issuance of the patent on March 3, 1885, to the latter company, was irregular and without authority of law, and that the United States could not convey title to the land described to the New Orleans Pacific Railway Company. That a compromise was entered into, known as the Blanehard-Robinson compromise, which was embraced in an act of date February 8, 1887, wherein it was provided :
“That all said lands occupied by actual settlers at the date of the definite location of said road and still remaining in their possession or in possession of their heirs or assigns shall be held and deemed excepted from said grant, and shall be subject to entry under the public land laws of the United States.”
That this land, at the time of the definite ■ location of the railroad down to the present time, was continuously occupied by an actual settler, who was qualified at the time of his occupancy of said land to make a homestead entry thereon, as has been expressed by the terms of the compromise before referred to. That Frank Flurry was then the actual settler on said land, and that his rights had been recognized by the Land Department of the government. That this defendant was the possessor and conditional owner of the land; and he asks that there be judgment recognizing his conditional ownership and right of possession, and that he have judgment for damages against plaintiff for the wrongful issuance of the writs of injunction and sequestration, by which certain timber had been seized,' and by which he was prevented from occupying the land. There was judgment in favor of plaintiff, and defendant appeals.
Plaintiff’s suit is for three things: (1) To enjoin trespass by defendant on certain land and timber claimed by plaintiff; (2) to sequester and recover a car load of staves, or its value, cut and removed from said land by defendant; (3) to quiet plaintiff in the title,, ownership, and possession of said land and timber.
■ This suit was filed January 24, 1913, within one year after defendant went upon the land in question to live, April 25, 1912. The evidence shows that defendant made unsuccessful application to the Land Office for a patent to said land, and that he made a conditional verbal promise to John Flurry to pay him $125 for' the land, which amount has not been paid.. The evidence shows further that John Flurry made application to the Land Office for a patent to this land, and that his application was refused. The only interest therefore that defendant has in the land is under the allegation in his answer that the land was occupied by an actual possessor at the date of the definite location of the railroad; and that the land remained in the possession of the settler, John Flurry, or his assign, who is defendant; and *374 that said land was excepted from the land granted to the railway company; and that it is subject to entry as public land of the United States; and that he may renew his application to the Land Office for a patent therefor; and that the said office may reverse its former ruling, and issue a patent to him.
The acts constituting the trespass by the defendant, which plaintiff seeks to enjoin, are admitted as follows:
“It is admitted that within less than a year of the filing of this suit, Arthur Bonnette, defendant, built a small house on the N. W. 14 of the N. Í3. 14, section 1, and is still living there; that he cut some timber thereon, and interfered with and refused to allow plaintiff’s employés to go on the property, and cut and remove the timber on the said W. % of the S. E. 14.”
The acts justifying the sequestration are admitted as follows: -
“It is admitted that the defendant, Arthur Bonnette, within a few weeks before the filing of this suit, sent a car load, more or less, of Oak staves, of the value of $62, from said W. % of the S. E. 14, section 1, and that plaintiff sequestered said stave bolts, defendant bonded same, and sold it for $62.”
It was further admitted:
“That thé definite location of the New Orleans & Pacific Railway Company, opposite the land in question, was made on November 17, 1882, and that the land involved in the suit is lieu or indemnity land, and is not in the original grant limits.”
The land in question was within the in-, demnity limits of the land granted, and not within the primary limits of the grant.
Land within primary limits of a land grant in aid of a railroad are identified and segregated from the public domain by the filing with and acceptance of the Secretary of the Interior of the map of the definite location of the railroad in aid of which they are granted, and the grant of these lands takes effect as to the date of the approval of the act in the grant.
Lands within the indemnity limits of a land grant remain the property of the United States, and subjéet to disposal by them, until such lands are accepted by the beneficiary in lieu of lands within the primary limits. Lands within the indemnity limits are not reserved unless they are either those divested or are withdrawn by the Secretary of the Interior, pursuant to the terms of the act. St. Paul, M. & M. R. R. Co. v. Sage, 91 Fed. 40, 17 C. C. A. 558.
The land is therefore what is known as lieu or indemnity land, and was severed from the public domain March 3, 1885, and it became the property of the railroad company at that time.
John Flurry, from whom defendant claims, was not clearly shown to have been in possession in 1882 when the line of the New Orleans & Pacific Railroad Company was definitely located; and he did not remain in continuous possession. Defendant takes nothing from John Flurry.
[2] In our opinion, the plea of prescription of five years, under act of the Congress, March 2, 1896, pleaded by plaintiff, and the confirmatory acts of the Congress of date March 3, 1887, and March 2, 1896, are conclusive of the ease, and the judgment of the court will be based thereon.
In considering a similar claim to that made by defendant in the case of Iatt Lumber Co. v. Faircloth, 132 La. 906, 61 South. 866, we say:
“The original grant of 1871 excepted from the operation of the grant all lands occupied by actual settlers at the date of the location of the road, irrespective of whether such settlers were or not ‘entitled to make homestead or pre-emption entries.’ Lisso v. Devillier, 118 La. 559; 43 South. 163. And the confirmatory act of February 8, 1887 (24 Stat. c. 120, p. 391), was to the same effect. But the curative act of March 3, 1887, 24 Stat. c. 376, p. 556 (U. S. Comp. St. 1901, p. 1595), confirmed the title of bona fide purchasers from the railroad as against * * * entries. And, finally, the. supplemental curative act of March 2, 1896 (29 Stat. c. 39, p. 42), confirmed the title of bona fide purchasers from the railroad even as against homestead or pre-emption entries. It provided that: ‘No patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed.’
“No exception is here made in favor of set- *376 tiers of any kind; even homesteaders and preemptioners are cut out.”
Plaintiff’s title has been confirmed by the statute of March 2, 1896; it is a bona fide purchaser from the railroad company, or its assigns.
This view of the statute of March 2, 1896, was accepted and acted upon by the United States District Court on March 4, 1913, in the Brazeale Case- (no opinion filed), in the following words:
“The title of complainant is confirmed under the acts of Congress of March 3, 1887, 24 Stat. L. 556, and March 2, 1896, 29 Stat. L. 42, patent having been issued to the New Orleans P'acific Railway Company on June 25, 1885, conveying- to the said New Orleans Pacific Railway Company the N. % of the S. W. %, N. W. % of the S. E. and S. W. % of the N. E. section 15, township 9 north, range 1 west, Louisiana Meridian, and therefore the preliminary injunction sued out in this case is hereby perpetuated and sustained.”
[1] Defendant next argues that the prescriptive term embraced in the act of March 2, 1896, is without application here for the reason that the land in question was occupied by an actual settler at the time that the line of railroad was established, and that it was excepted from the grant made to the railroad company, by the very terms of the act, and that therefore the land, not being embraced in the grant, and being reserved as public land subject to entry, prescription could not run in favor of the railroad company, or its assigns. But the fact is, as shown in the record, that a grant of this particular land was made to the railroad company; and the terms of the act of March 2, 1896, are sufficiently broad to embrace that grant; and the .act was clearly designed to 'quiet grants made for railroads and wagon roads.
The act of Congress of March 2, 1896, is entitled:
“An act to provide for the extension of time in which suits may be brought to vacate and annul land patents, and for other purposes.”
The act embraces three sections, and it covers patents issued under a railroad or wagon road grant; but it will be necessary to quote only the first section of the act in finally disposing of the case, and it reads-as follows:
“Be it enacted by the Senate and House of Representatives of the United States in congress assembled, that suits by the United States to vacate and annul any patent to lands heretofore erroneously issued under a railroad or wagon road grant shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereinafter-issued shall only be brought within six years after the date of the issuance of such patents, and the limitation of section eight of chapter five hundred and sixty-one of the acts of the second session of .the Fifty-First Congress and amendments thereto is extended accordingly as to the patents herein referred to. But no patent to any lands held by a bona fide purchaser shall be vacated or annulled but the right and title of such purchaser is hereby confirmed: Provided, that no suit shall be brought or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of'the government or its officers to withdraw the same from sale- or entry.”
If it should be assumed that Frank Flurry and Ms conditional assignor, defendant in this case, have been in continuous possession of the land since a time prior to the location of the line of the railroad, and that the grant to the railroad was erroneously made by the government of land which had been excepted and reserved, this defendant has-been guilty of laches; and the Land Department and the courts are unable to afford him any relief. Such rulings have been uniform by the Land Department of the government.
The defendant has not a standing against the railroad company; and he has less standing against a bona fide purchaser from the-railroad company, or from its assigns, such as the plaintiff in this case unquestionably is..
That statute goes further than is set forth in the decisions hereinbefore quoted from;. it declares:
“That suits by the United States to vacate- and annul any patent to lands heretofore erroneously issued- under a railroad or wagon r,oad grant shall only be brought within five years-from the passage of this act.” March 2, 1896.
*378 Defendant did not sue for possession of the land within five years from 1896; and the government of the United States, whom he ■alleges may hereafter issue a patent to him, although it has heretofore refused to do so, is precluded from instituting a suit to vacate or annul the title of plaintiff, and that of its assignor, the railroad company.
Defendant argues that this act of repose by Congress is without application here, for the reason that the railroad company never had title to the land involved; but the evidence clearly shows that the land was embraced in the grant to the railroad company, .and the statute of repose is intended to quiet the title granted by the government to the railroad company with reference to' all lands about which there may have been a -question about the title. It would have been unnecessary to pass a statute of repose with reference to lands about which there was no question as to the validity of the title thereto.
Defendant cannot therefore be 'heard in a court of justice to attack the title of plaintiff at this late date; and judgment will be rendered against him.
This ruling on the plea of prescription is in accord with that of the Supreme Court of the United States, in the case of United States v. Chandler-Dunbar Water Power Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881. There the United States filed a Bill in equity to remove a cloud from two certain islands claimed by it in the Sault Ste. Marie between Lakes Huron and Superior. The United States claimed that the patent which had been issued by it was void, because the land had been reserved for public purposes, and that even if it was valid, the islands did not pass. The defendant replied that the land was not reserved, and it also set up the statute of limitations. Act Cong. March 3, 1891, c. 561, § 8, 26 Stat. L. 1099. The statute of limitations relied upon there is almost word for word like the one relied upon in this case, except that in the former case the statute is general in its terms, while that now under consideration refers to railroad and wagon road grants.
The statute under consideration by the Supreme Court of the United States provided:
“Suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act,” etc.
While the language used in the statute we have to consider, of date March 2, 1896, reads:
“That suits by the United States to vacate and annul any patent to lands heretofore er-. roneously issued under a railroad or wagon road grant shall only be brought within five years from the passage of this act.”
The Supreme Court disposed of the case before it in the following language:
“The patent had been issued in 1883 by the President in due form and in the regular way. Whether or not he had authority to make it, the United States had power to make it, or to validate it when made, since the interest of the United States was the only one concerned. We can see no reason for doubting that the statute, which is the voice of the United States, had that effect. It is said that the instrument was void and hence was no patent. But the statute presupposes an instrument that might be declared void. When it refers to ‘any patent heretofore issued,’ it describes the purport and source of the document, not its legal effect.
“If the act were confined to valid patents, it would be almost or quite without use. Leffingwell v. Warren, 2 Black, 599 [17 L. Ed. 261].
“In form the statute only bars suits to annul the patent. But statutes of limitation with regard to land, at least, which cannot escape from the jurisdiction, generally are held to affect the right, even if in terms only directed against the remedy. Leffingwell v. Warren, 2 Black, 599, 605 [17 L. Ed. 261]; Sharon v. Tucker, 144 U. S. 533 [12 Sup. Ct. 720, 36 L. Ed. 5321; Davis v. Mills, 194 U. S. 451 [24 Sup. Ct. 692, 48 L. Ed. 1067]. This statute must be taken to mean that the patent is to be held good and is to have the same effect against the United States that it would have had if it had Been valid in the first place. See United States v. Winona & St. Peter R. R. Co., 165 U. S. 463, 476 [17 Sup. Ct. 368, 41 L. Ed. 789].”
*380 The two statutes of limitation being acts of the Congress, and almost identical in terms, the ruling of the Supreme Court of the United States with reference to one must he applied, to the other statute. The plea of prescription filed by the plaintiff to the claim of defendant is sustained, and defendant’s claim is rejected.
An error was made in describing the property in the judgment appealed from, which will have to be corrected.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended so as to include the land and timber on the E. % of the S. W. Vi, and S. W. Vi of S. E. Vi, and the pine timber on the N. W. Vi of the S. E. %, all in section 1, township 10 north, range 5 west, Winn parish, La.; as thus amended, it is affirmed, at defendant’s cost.