FAY et al. v. CITY OF SPRINGFIELD et al.

(Circuit Court, S. D. Missouri, W. D. May 9, 1899.)

1. CONSTITUTIONAL LAW—PUBLIC IMPROVEMENTS—ASSESSMENTS—FRONT-FOOT RULE.

The statute of Missouri (sections 1495, 1496, Rev. St. 1889) authorizing the apportionment of the costs of repaving a street in cities of the third class on blocks and lots abutting thereon according to the front foot, without regard to the question of fact whether or not the given parcel of land is benefited thereby to the extent of the assessment, and without affording the property owner an opportunity to question the existence of such benefit, is in contravention of the fourteenth amendment to the federal constitution, and is therefore void.

2. SAME—PECULIAR BENEFITS—HEARING.

The only theory of law under which the cost of such street improvements can be imposed as a special tax on the abutting property rather than as a burden upon the entire municipal community, being the fact that the local property is peculiarly benefited thereby, statutes or ordinances which arbitrarily assume that such local property is benefited in the proportion of the frontage thereof are invalid, unless the opportunity is afforded, at some period in the progress of assessment and the enforcement thereof, to be heard upon the question of fact as to whether or not the benefit is equal to the burden imposed, and as the supreme court of the state holds that, notwithstanding no notice or hearing is provided therefor when the tax is imposed by the city council, the owner when sued for the enforcement of the special tax cannot be heard to defend upon the ground that his property was not in fact benefited, nor upon the question as to whether the apportionment of the costs is equal among the several lot owners, the statute is violative of the fourteenth amendment of the federal constitution, and the whole tax may be enjoined. Following Village of Norwood v. Baker, 19 Sup. Ct. 187, 172 U. S. 269.

(Syllabus by the Court.)

James Baker, for complainants.

R. S. Goode, Barbour & Daniels, and A. A. Johnson, for defendants.

PHILIPS, District Judge. This is a bill in equity to enjoin the enforcement and collection of special tax bills assessed against lots fronting on Commercial street in the city of Springfield, Mo. The

complainants are owners of certain of the lots; and the bill alleges, in substance, that the city of Springfield, which is a city of the third class, under the statutes of the state of Missouri, passed a resolution directing the repavement of said street from the center of Boonville street to the center of Benton avenue, embracing a number of blocks fronting on said street, and that it made a contract for said repaving with the defendant A. A. Myrick; and for the payment of the cost of this work the city provided by ordinance as follows:

"That there is hereby levied and assessed a special tax against the lots and pieces of ground hereinafter described to pay for the construction of a brick pavement of Commercial street from the center of Boonville street to the center of Benton avenue, as provided by resolution No. 370, approved June 9, 1898. The assessments herein charged being apportioned among the several lots and pieces of ground made liable therefor by the block, according to the front foot thereof, as follows."

The ordinance then set out a description of the lots thus assessed by the front foot, among which are the lots owned by the complainants severally. The aggregate amount of this work is $12,657, and tax certificates upon said assessment were issued to said Myrick by the city council against each of the owners of lots abutting on said street within the limits specified in said ordinance in proportion to the frontage of the lots. The bill alleges that the city assumes and claims that the statute under which it was incorporated confers upon it authority to so levy and collect said taxes, and all other taxes for local improvements heretofore levied by it based upon the number of front feet abutting on such improvement, without limit as to the amount thereof, and without reference as to the value of the property, or the betterment, if any, conferred upon the owner of the property by the improvements, and that the same is not in conflict with the constitution of the United States or of the state of Missouri. The bill alleges that while the city, in assessing said taxes, conformed to the provisions of the law under which it attempted to act, yet said act is in conflict with the constitution of the United States, especially the fifth and fourteenth amendments thereof. It is also averred that a part of the lots so taxed are well improved and of much greater value than others which have no improvement and are of but little comparative value. There are other averments contained in the bill which are not material to be recited. The bill prays for a decree declaring the act of the legislature under which the proceedings were had to be inoperative, for the reason that it is in conflict with the constitution of the United States and the amendments thereto, and that the tax so assessed thereunder be declared void, and the collection thereof perpetually enjoined. The bill is brought in behalf of the complainants and all other persons similarly affected by the attempted exercise of the power claimed. The cause is heard on an application for a temporary injunction. The defendants have filed an answer to the bill, but not under oath.

I am unable to perceive why this case is not controlled by the ruling of the supreme court in Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187. The provision of the Ohio statute, on which that case depended, was similar, in legal effect, to the statute of

Missouri and the ordinance of the city of Springfield, under which the assessments were made. The Ohio statute provided that, where an improvement of an existing street should be ordered and made, the expense thereof, when not assessed as a general tax to be paid by the municipality generally, "shall be assessed by the council on the abutting and such adjacent and contiguous and other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the front foot of the property bounding and abutting upon the improvement, as the council by ordinance setting forth specifically the lots and lands to be assessed may determine before the improvement is made." The case decided by the supreme court, supra, was that of an assessment based upon the last clause above quoted, by the front foot of the property bounding and abutting upon the improvement. The Missouri statute under which this special tax was imposed (subsection 3, § 1495, Rev. St. Mo. 1889) provides that:

"For paving, macadamizing, curbing and guttering all streets, avenues and alleys, and repairing same, and for doing all excavating and grading necessary for same, after said streets, avenues and alleys have first been brought to grade, * * * the assessment shall be made for each block separately, on all lots and pieces of ground on either side of such street or avenue, the distance improved or to be improved, or on lots or pieces of ground abutting on such alley, in proportion to the front foot."

Section 1496 then declares that:

"The assessments made in pursuance of the second and third clauses of the second subdivision of the preceding section shall be known as special assessments for improvements, and shall be levied and collected as a special tax, and a special tax bill shall issue therefor, and be paid in the manner provided by ordinance. Said special tax may bear interest after thirty days from the date of issue and presentation of same at the rate of ten per cent. per annum; and every such special tax bill shall be a lien against the lot of ground described in the same until the same is paid."

While it is true that the Ohio statute differs from the Missouri statute, in that, in addition to the mode of assessment by the front foot, it gave to the council the power to apportion the cost of such improvement upon the abutting lot owners in proportion to the benefits resulting from the improvement, or according to the value of the property assessed, yet the city of Norwood did not see fit to pursue either of the last two methods. How this difference in the two statutes is to help the defendants is not apparent. It only shows that it was in the mind of the legislature of Ohio that the matter of apportionment of such burden could be predicated upon the basis of relative benefits bestowed upon the abutting property, or according to the relative value thereof; whereas the Missouri statute contains no such provision whatever respecting betterments, or the relative value of the property touched. On the contrary, the Missouri statute provides absolutely, independent of any consideration of benefits conferred upon the lot owner by the street improvement, and independent of any consideration of relative value of the property assessed, "that the assessment shall be made for each block separately on all lots and pieces of ground on either side of such street, the distance

improved or to be improved, or on the lots or pieces of ground abutting on such alley, in proportion to the front foot." The Ohio statute further provided, in case an apportionment of the costs was directed on the basis of benefits, a method in advance of such assessment for ascertaining the benefits and apportioning the same. Section 2277, Rev. St. Ohio. But, as persuasive proof that it was not in the mind or purpose of the framers of the Missouri statute that any such ascertainment should enter into the apportionment, no method whatever is provided therefor; and the ordinance adopted by the city council clearly enough shows that the matter of relative betterments, as a basis for the apportionment, was not contemplated or provided for. After passing the resolution that the work be done, the first section of the ordinance "levied an assessment and special tax against the lots; * * * the amounts herein charged being apportioned among the several lots and pieces of ground made liable therefor by the block, according to the front foot thereof." It is to be conceded that the courts of this state, while admitting that the only permissible theory under the fundamental law upon which a special tax for street improvements can be assessed against the property of the individual member of the municipal community is on the ground of special benefit conferred thereby not common to the whole community, yet they have maintained that this requirement is fully met by arbitrarily apportioning the cost of the improvement according to the front foot throughout the extent of the street. Without reviewing the cases in general, this has practically been recognized in a perfunctory way. This doctrine culminated in an opinion by Judge Wagner in City of St. Louis v. Clemens, 49 Mo. 552. As the opinion shows, the court first ruled that, regardless of the completion of the contract along the whole line of the street to be improved, any one lot might be assessed for the cost of the work done on its immediate front, no matter if, instead of benefiting the lot, the work done practically ruined its value; thus fitly illustrating how intolerable the rule that would arbitrarily subject the private property of the citizen to the burden of public improvement when separated from the basal proposition of benefits bestowed equal to the burden imposed. Judge Wagner, when confronted with this dilemma, receded, and said:

"The property must bear its just burden to the whole work according to its frontage. Any other construction would be unequal and unjust, and contrary to the theory of supposed benefits which support and uphold these laws. Grading in front of a given piece of property may be a damage instead of a benefit, and it will not be presumed that the property holder should be obliged to pay for the whole work that causes his damage. The assessment should be made in the proportion which the whole frontage of any particular lot bears to the entire work."

After thus recognizing the foundation of the rule of special assessments, it seems to my mind to be irreconcilably contradictory to say that the requirement is fully met by an apportionment based solely upon the frontage of the lots on the street, without any regard whatever to the fact of whether or not the particular lot is benefited at all by the work done throughout the length of the street improved, and without any regard to the fact of whether or not the benefit bestowed is equal, as between all the lots fronting on

the street. It is to be observed that the learned judge had just recognized the demand of justice that the particular lot should only bear its just proportion, and therefore an assessment which should be made for the cost of the work done in the immediate front of the lot might be ruinous rather than beneficial to it. This being unquestionably correct, exactly how this condition of the particular lot thus inconvenienced or left by the improvement could be changed into a benefit by completing the extension of the street throughout the distance covered by the contract is incomprehensible, as also why gross inequality might not continue to exist among the lots assessed after the completion of the work. The utmost that can be urged in favor of the front-foot rule, as applied to the case at bar, is, as has been suggested by counsel, that it is the policy of the state legislature on this subject, which rests for its support upon the bald assumption that reasonable equality is attained by this method; that is to say, if the legislature should declare that the cost of opening and paving streets in cities of the third class shall be assessed upon one block most centrally situated along the line of the street, the act should stand, because it is the declared legislative policy of the state, and because, in the judgment of the legislature, the method reasonably approaches equality and justice. Statutes in this and other states, which provide that the cost of such improvement shall be assessed where the lots touch, according to their value, furnish more nearly a rule of equality, for they are based upon the underlying principle of the revenue laws of the state, which require every citizen to contribute towards the burdens of government according to the assessed value of his property, as that bears some reasonable relation to the quantum of protection or benefit his property receives. At all events, it is less instinct with inequality and injustice than the front-foot rule, which utterly ignores the relative benefits received by the several lots called upon to contribute.

The discussion in Barnes v. Dyer, 56 Vt. 469, cited in Village of Norwood Case, is quite pertinent to this contention of defendants. Under the act of the legislature under review in that case, the city council was authorized to assess the owners of abutting property for a street improvement "so much of the expense thereof as they shall deem just and equitable." The statute further provided for —what the Missouri statute does not—notice, hearing, and appeal. The constitutionality of this act was successfully attacked by the property owner sought to be taxed under it. The court held that the language "as they shall deem just and equitable" fixed no definite standard by which the rights of the taxpayer were to be protected, as it was impossible from the terms employed to know upon what theory the council proceeded in determining what was equitable and just, whether it was in view of benefits bestowed, or upon the value of the land, or personal convenience to the owner, or of his ability to pay, or all combined. The court, after referring to Judge Dillon's discussion of this question, said:

"The act in question makes no express allusion to the assessment on account of benefit; neither does it limit the assessment to the amount of benefit. Yet,

as we have seen, the right to assess at all depends solely on benefit, and must be proportioned to and limited by it. An improvement might cost double the benefit to the land especially benefited."

Further on the court said:

"The cases which have established the rule that the statute authorizing an assessment must fix the legal standard to which it shall be made to conform have not turned on the phraseology of constitutional provisions. It is everywhere treated as a general constitutional principle that no member of society shall be compelled to contribute more than his proportion. . Unless this is so, there is no protection against arbitrary injustice in the imposition of taxes. To secure this protection, courts have held that legislative enactments must set up a standard, fix a rule, to be conformed to as a guide in all cases,—a uniform, certain rule, so far as reasonably practicable, and not susceptible to different applications to different individuals of the class to which it applies. If the enactment fails in this regard, it is deemed fatally defective. The proposition is sound, because it is an adherence to the fundamental principles which in a constitutional government are designed to protect the individual against injustice and oppression."

A like ruling was made on a like statute in Bogert v. City of Elizabeth, 27 N. J. Eq. 568, cited by Mr. Justice Harlan. How much more so should it be held that the Missouri statute is obnoxious to the fundamental right of private property when it not only directs that the apportionment of such special tax shall be according to the front foot, but does not even limit the discretion of the governing council in making the assessment to any consideration of its equity or justice? Who can tell in this case by what consideration the council of Springfield distributed the cost of this work according to the front foot? Did they consider the relative benefits of each lot, or the value thereof, or the convenience of the owner, or his ability to pay, or all combined? Following the same thought, Mr. Justice Harlan (172 U. S. 281, 19 Sup. Ct. 191) said:

"It will not escape observation that, if the entire cost incurred by a municipal corporation in condemning land for the purpose of opening or extending a street can be assessed back upon the abutting property without inquiry in any form as to the special benefits received by the owner, the result will be more injurious to the owner than if he had been required in the first instance to open the street at his own cost without compensation in respect of the land taken for the street; for by opening the street at his own cost he might have at least saved the expense attending formal proceedings of condemnation."

It is argued here in support of this assessment, as was done in Village of Norwood Case, that the court ought not to interfere by injunction, because the complainants did not show nor offer to show by proof that the amount of the assessment upon their property was in excess of the special benefits accruing to it by reason of the opening of the street; and the bill of complaint in this case is vigorously assailed because it does not in terms so aver. To this the court replied:

"This suggestion implies that, if the proof had showed an excess of cost incurred in opening the street over the specific benefits accruing to the abutting property, a decree might properly have been made, enjoining the assessment to the extent simply that such cost exceeded the benefits. We do not concur in this view. As the pleadings show, the village proceeded upon the theory, justified by the words of the statute, that the entire cost incurred in opening the street, including the value of the property appropriated, could, when the assessment was by the front foot, be put upon the abutting property, irrespective of

special benefits. The assessment was by the front foot and for a specific sum representing such cost, and that sum could not have been reduced under the ordinance of the village, even if proof had been made that the costs and expenses assessed upon the abutting property exceeded the special benefits. The assessment was in itself an illegal one, because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was therefore the only appropriate one."

It is to be conceded to the contention of defendants' counsel that if, notwithstanding the statute in question makes no provision either before or at the time or after the assessment of the special tax for a hearing or contest by the lot owner as to whether or not his property is benefited by the improvement as charged against his lot, yet, if when sued on the tax bill he has the right to defend thereto on the ground that his property received no benefit, and can in this manner have this right adjudicated, then the statute is not unconstitutional as to this assessment, as he would thus have his day in court to contest its validity in this respect. Because of some confusion in the language of the judge who wrote the opinion in the particular case, this question is not free from some embarrassment, and to its consideration I have given careful attention, as I have no disposition to produce any conflict of opinion with the supreme court of the state touching so vital and important a question as this case presents, especially where its construction of the state statute is binding on the federal court.

In City of St. Louis v. Richeson, 76 Mo. 470, it would seem, on a casual reading, as if the court had sustained this contention of counsel; but, read in the light of the real question involved in that case, the decision does not go to the extent claimed for it. That was a condemnation proceeding, authorized by the charter to be instituted before one of the circuit courts of St. Louis, directing, upon the filing of a petition, that a summons should issue, giving the defendant 10 days' notice of the hearing of the petition. It further provided that, upon the court being satisfied that due notice had been given, it should appoint commissioners to assess damages which the owners of land may severally sustain by reason of such appropriation. The fifth section of the charter made it the duty of the commissioners to ascertain the actual value of the land proposed to be taken, without reference to the projected improvement and the actual damage done to the property thereby, and for the payment of such values and damages to assess against the city the amount of benefit to the public generally, and the balance against the owners of the property especially benefited by the improvement, in the opinion of the commissioners, to the amount that each lot of said owner shall be benefited by the improvement. It is further provided that the amounts to be paid by the owners of property especially benefited, as ascertained by the commissioners, should be a lien on the property so charged. The act further provided that the report of the commissioners might be reviewed by the circuit court on exceptions filed, whereupon the court should make such order therein as right and justice might require, and might order a new appraisement upon good cause shown; that the hearing of such exceptions should be summary, etc. It further

provided that tax bills should be issued therefor, and after the expiration of 60 days the unpaid bills should be turned over to the city counselor for collection by suit in the name of the city. To one of such suits the owner of a parcel of land appeared and answered, setting up that he had had no notice of said proceedings resulting in the taxation of his property at any time during its pendency, and claimed that the assessment and judgment were in contravention of the fifth amendment to the federal constitution. The court sustained a demurrer to this answer. A majority of the supreme court sustained this action of the circuit court, for the reason that the defendant, when sued upon the tax bill, might maintain, "by way of answer, any good and valid defense he might have, or which he could have presented to the original proceedings in the circuit court for the condemnation of said property and the assessment of said benefits, if he had been made a party thereto and had notice thereof. But the answer actually made by the defendant was that he was not a party to, and had no notice of, said original proceedings in the circuit court, etc. It may be conceded that this answer is true, and yet, if our construction of the charter and ordinance is correct, this answer, in the language of the demurrer, does not state facts sufficient to constitute a defense to this action. It may be true that he was not a party to said original proceeding during its pendency, and had had no notice thereof; yet that fact is wholly immaterial, if he is a party thereto, duly notified, and can be heard in his defense herein. In this particular we think the defendant in his answer misconstrued the charter, ordinance, and proceedings thereunder, and mistook his rights and remedy in the premises. The demurrer to the answer as filed, therefore, was rightfully sustained." It is to be observed in the first place that the fifth section of the charter in question provided, first, "for the payment of such values and damages, to assess against the city the amount of benefit to the public generally, and the balance against the owners of all property which shall be especially benefited by the proposed improvement, in the opinion of the commissioners, to the amount that each lot of said owner shall be benefited by the improvement." That is to say, the one feature which most distinguishes that charter from the statute in question is that the commissioners were authorized to apportion the balance to the private lot owner as he should be benefited by the improvement. Under this charter, therefore, his lot could not be subjected to a tax greater than the benefit received from the improvement; whereas, under the statute in question, the cost of the improvement is to be apportioned according to the front foot, without regard to the amount of benefit the owner receives therefrom. In other words, the right of the property owner under the St. Louis charter not to be subjected to a greater burden for the cost of the improvement than the benefit he received therefrom was preserved in the very law which subjected him to the tax. And inasmuch as the statute which conferred upon the circuit court the power to proceed to judgment in the case demanded that the property owner should have notice and a hearing thereon, with the ex-

press direction that if the circuit court, as a court of general jurisdiction, is of opinion that the assessment was unduly apportioned, it "shall make such order therein as right and justice may require, and may order a new appraisement," it made the assessment imposed upon the defendant subject to this right of review and readjustment by the court, as "justice may require." And therefore the court held that, if the circuit court proceeded to judgment of condemnation and assessment of benefits without notice to the defendant, this right was not wholly gone, but he might, when sued for the enforcement of the tax, make such defense thereto as he could have made in the first instance in the circuit court. But no such provision is found in the statute in question. On the contrary, the power conferred on the city council is imperative, and without discretion, to apportion the cost of the improvement of the whole street upon the abutting lot owners "in proportion to the front foot." This is emphasized by the provisions of section 1498 of this statute, which provides that the city council shall have power, by resolution, to declare that the work or improvement is "necessary to be done," and after providing for the publication of such resolution for two weeks, unless a majority of the resident owners of property liable to taxation therefor file a protest against such improvement, "then the council shall have power to cause such improvement to be made, and to contract therefor, and to levy a tax as herein provided." So that, if it could be held that under this statute the defendant when sued upon the tax bill could make defense thereto, such defense could, in the very nature of things, be no greater than he could have made to the assessment if notified thereof during the pendency of the proceedings with the right to a hearing; and the court, by the statute itself which would be the source of its power, could do nothing more than to see in the matter of benefits that the proportion assessed against the lot was not greater than the frontage thereof. A moment's consideration of this aspect of the statute in question will demonstrate the fact that an attempt by the trial court in a suit for the enforcement of a tax bill to try and determine the question of benefit to the defendant's lot would thwart the whole scheme of this statute for the apportionment of such special assessment. The tax being a statutory lien, under the state practice the suit would be an action at law, in which either party would be entitled to demand a jury. Suppose in such trial the jury should find that the particular lot was unduly assessed by at least one-half more than the benefit received; as the other lot owners would not be parties thereto, there could be no ascertainment binding on them as to how much they should have been assessed; nor would the trial court have power under this statute, as in the case of the St. Louis charter, to direct a readjustment of the assessment on the lots. Likewise, in separate suits against the lot owners, varying results might be reached by the jury, the sum of which would be a dislocation and disarrangement of the whole assessment, defeating the declared purpose and language of the statute, which demands that the apportionment shall be by the front foot, and by no other means. The

94 F.—27

contractor could not go back to the city council and have new certificates issued which could bind any lot owner to a proportion greater than that established in the judicial proceeding. As the claim of the contractor is not an obligation of the municipality, how would he be paid for his work? The situation thus presented is quite different from that class of cases where the taxpayer defends against the suit on the ground that the statute or the ordinance which authorized the imposition of the tax has not been complied with, or that the work done by the contractor is not done in conformity to the contract, and therefore the contractor, in justice and good conscience, is not entitled to collect the amount expressed in the certificate. He loses in such case to the extent of his default. In other words, he loses nothing, because he has not earned his demand under the statute and under the contract. Not so in a case like this, where no question is made that the contractor has not in all respects performed his contract, and the value of the work is equal to the sum of the certificates which have been issued to him in strict conformity to the statute on the "front-foot rule." I furthermore assert that the supreme court of this state since the decision in the Richeson Case, supra, has expressly decided that in a suit on such tax bill, where the assessment has been apportioned on the front-foot rule, the taxpayer cannot defend on the ground that the particular lot was not in fact benefited. In Farrar v. City of St. Louis, 80 Mo. 379, the statute in question directed that when the work "is completed the president of the board of public improvements shall compute the cost thereof respectively in the proportion that the linear feet of each lot fronting or bordering on such improvement bears to the total number of linear feet of all the property chargeable with the special tax, and shall make out and certify to the comptroller, on behalf of the contractor, bills of such cost and assessment accordingly as required by law." Among the defenses interposed in that case was the following:

"That the ordinance makes no provision for ascertaining the benefits to the public; but assesses the whole cost thereof equally upon each linear foot fronting on said avenue."

Judge Norton, after reviewing the rulings of the supreme court of the state touching this question, said:

"Having shown that the charter of the city confers upon it power to pave and reconstruct its streets, and to assess the cost of the work on the adjoining property, without binding it to any method of apportioning the cost, but leaving the municipal authorities free to adopt any method not forbidden by the constitution or general laws of the state, it follows that they might adopt any method in apportioning the cost which the legislature could adopt."

Further on he said:

"The liability of lots fronting on the street, the paving of which is authorized to be charged with the cost of the work according to their frontage, having been thus so repeatedly asserted, the question is no longer an open one in this state, and we are relieved of the necessity of examining authorities cited by counsel for plaintiff, condemning what is familiarly known as 'the front-foot rule.' While irregularities arising in the enforcement of the rule in consequence of irregularities in the situation and depth of lots may afford a reason for an appeal to the legislative power of the state for their rectification, they would not justify the courts in invading the domain of the legislature."

And as further incontestable proof that in the mind of the supreme court where the legislature has arbitrarily fixed as the basis of the assessment the mere frontage of property, without regard to its value or extent of its improvement, no inquiry is permissible by way of defense to such assessment when made by the front foot, he asserts by way of quotation, on page 395, that:

"It is not in the power of the courts to enforce any fancied scheme of equality seeming to them more just than the one adopted by the legislature. The latter department of the government is wisely intrusted with the entire control of this subject, and, if practical injustice is done, the remedy is with the people." Again: "It is not whether the tax will produce perfect equality of burdens, nor whether the power may not be abused. We know too well that under any system of taxation these things may and do happen. They are evils not within the powers of the courts to remedy. It is for the legislature to guard against them."

This case was followed by that of Rutherford v. Hamilton, 97 Mo. 543, 11 S. W. 249, in which the defense was sought to be made that the act was unconstitutional, "because the cost of the sewer was apportioned by the city engineer against the property fronting on the improvement in proportion to the frontage of each lot, without considering the amount of actual benefits conferred by the sewer on each lot owner." And it was held not only that the frontfoot rule obtained in the state, but, in effect, that such an assessment was conclusive on the property owner as to the amount of benefit received. Again in Keith v. Bingham, 100 Mo. 300, 13 S. W. 683, it was held that "the fact that the street did not benefit but damage the property sought to be charged with the tax bill is no defense to an action on the latter." As further proof that this is the opinion of the supreme court, in City of Nevada v. Eddy, 123 Mo. 546, 27 S. W. 471, Chief Justice Gantt (123 Mo. 562, 27 S. W. 475) said:

"The power, under section 1495, Rev. St. 1889, is in the municipality to determine the necessity of the improvement, subject to the protest of a majority of the resident adjoining owners, and to assess it on all lots and pieces of ground abutting on the improvement according to the front foot thereof. The owner without a building is taxed in the same proportion as one who owns a valuable building, or, mayhap, a palatial residence."

Language could not more forcibly emphasize the fact, not only that the front-foot rule is arbitrary, regardless of the respective benefits to the property touched, but that it admits of no contention that the party assessed is not benefited at all. But it is suggested that Judge Gantt in the later case of Bank v. Carswell, 126 Mo. 436, 29 S. W. 279, held that this mode of assessment was not conclusive on the property owner, and that he might make defense of no benefit to a suit on the tax bill. If this were so, it certainly would not be creditable to the consistency of the supreme court of the state, and would be a remarkable achievement of tergiversation. The assessment in that case was made, under the general statute (sections 1404–1447, c. 30, Rev. St. 1889), by a city of the second class, which provided that the assessment should be made on the basis of the "value of all the property to be charged with the cost thereof, exclusive of the improvements thereon, by the

city assessor, which assessment shall be delivered to the city engineer. * * * The city engineer shall compute the cost thereof and apportion the same among the several lots or parcels of property * * * according to the value thereof fixed by the city assessor aforesaid; and charge each lot or parcel of property with its proper share of such cost." The apportionment was not according to the front foot, but it was on the basis of the assessed value of the property to be charged therewith, and each lot or parcel of property was to be charged "with its proper share of such cost." The statute further provided "that nothing in this statute shall be so construed as to prevent any defendant from pleading in reduction of the bill any mistake or error in the amount thereof, or that the work therein mentioned is not done in a good and workmanlike manner; and that if any party shall set up by way of defense that the work was not done in a workmanlike manner, according to the class of work mentioned in the contract, and that such party before the commencement of the suit tendered to the contractor, or other holder of the bill, the full value of the work done, and shall establish the same on the trial, the recovery shall only be for the amount so tendered, and judgment for the costs shall be rendered against the plaintiff. The sole ground of defense in that case was that the tax was in contravention of the state and federal constitutions, "in that it sought to take defendant's property without due process of law, in that it sought to create a lien on his property and compel him to pay a local assessment without an opportunity to be heard on the matter." No question was presented in that case by the pleadings asking for any reconsideration of the question theretofore settled by the supreme court that in such suit the party could not defend on the ground of no benefits received, or authorizing the court to pass upon such question. Therefore the court simply held that the statute in that case was constitutional, and that the city "had the power to impose on the property owners the burden of the grading of the street, and this it has done by the charter, and it was competent for the legislature to empower the city to make the contract for grading. No notice was required to be given the defendant of the passage of the ordinance or the letting of the contract. * * * The only defense to this action is the unconstitutionality of the charter provisions of cities of the second class, and not the amount or correctness of the tax bill." Instead, therefore, of this ruling sustaining the contention of defendants' counsel, the express language of the judge is that the amount or correctness of the tax bill is not matter of defense. The offer, therefore, of defendants on this preliminary hearing to show by affidavits that in the opinion of affiants one of the lots in question was as much benefited by the improvement as another, and that the lots, independent of the improvements thereon, are of equal value, is no answer to the abuse which the statute invites. The inherent vice of the statute lies in the unbridled discretion conferred by it upon the municipal council, and the impossibility thereunder of judicially ascertaining what was in the mind of each member of the board in making the apportionment. As

said by Mr. Justice Peckham in U. S. v. Trans-Missouri Freight
Ass'n, 166 U. S. 318, 17 Sup. Ct. 550:

"The only proper way to construe a legislative act is from the language used
in the act, and upon proper occasion by a resort to a history of the times when
it was passed," and, further, that "it is the duty of courts to ascertain the
meaning of the legislature from the words used in the statute and the subject-
matter to which it relates."

This rule is always imperative where the language of the statute
is plain and unambiguous. Sedg. St. & Const. Law, 194–251. In
such case the statute must stand for a reason, and the courts are
not at liberty to look outside of it for some specious meaning or
import that may impart validity to it when assailed for its glar-
ing violation of a constitutional right of the citizen. The chief
justice in Bogert v. City of Elizabeth, supra, pertinently observed:

"This order [ordinance here] is so plain and definite that it is impossible by
construction to contract it within constitutional bounds. There is not a hint
in the clause suggestive of the idea that the land on the line of the street is not
to be burdened beyond the degree to which it is especially benefited."

In the very nature of the power imposing this special tax upon
the abutting property there must be some method of ascertain-
ment, and some time of determining, the question of fact as to
whether or not one lot is subjected to an undue burden compared
to that apportioned to the other lots alike situated. The whole
burden of such tax cannot be placed upon a single lot on the
ground that the whole is not greater than the betterment of such
lot, unless the other lots on the street derive no benefit therefrom.
The burden should be distributed ratably among the several lots in
the relative proportion of the benefits received by them. This is
so just and reasonable as to hardly require the support of author-
ity. Dill. Mun. Corp. § 671, in discussing this rule says:

"The decided tendency of later decisions is to hold that the legislative power
is not unlimited, and that these assessments must be apportioned by some rule
capable of producing reasonable equality." And further on: "That the special
benefits actually received by each parcel of contributing property was [is] the
only principle upon which such assessments can justly rest."

In Tide-Water Co. v. Coster, 18 N. J. Eq. 519, the court said:

"The rule must, at least, be one which it is legally possible may be just and
equitable as between the parties assessed."

To the same effect in Bogert v. City of Elizabeth, supra, the court
said:

"The sum of the expense is ordered to be put on certain designated property,
without regard to the proportion of benefit it has received from the improve-
ment."

And this was held to be fundamentally wrong.

Equality is equity. And the right of the owner of a lot to have
this burden of special tax ratably distributed among the lots bene-
fited does not depend alone upon the state constitution exacting
equal taxation, but has "its foundation in those elementary prin-
ciples of equity and justice which lie at the root of the social com-
pact" (In re Canal Street, 11 Wend. 154–156), and he can therefore
invoke for its security and protection the federal constitution,

which inhibits not only the taking of private property for public use without just compensation, but the deprivation thereof without due process of law, and denies to the state the power to "deny within its jurisdiction the equal protection of the laws." Following what I conceive to be the ruling of the supreme court in the Village of Norwood Case, supra, the temporary injunction asked for is granted.