JOSEPH T. JONES, Respondent, *v.* THE TOWN OF TONAWANDA and JOHN K. PATTON, Supervisor, Appellants.

1. TOWN OF TONAWANDA — HIGHWAY IMPROVEMENT UNDER LOCAL ACT OF 1893 — CONSENT OF PROPERTY OWNERS. Under the provision of the act (L. 1893, ch. 550) authorizing the town of Tonawanda, Erie county, to pave certain highways, that "when any such improvement shall have been determined upon and ordered as aforesaid, the same shall have no force or effect until the consent in writing shall be obtained of the owners of at least one-half of the actual feet frontage of land on each side of any highway ordered as aforesaid to be improved," an instrument sufficiently expressive of the consent of property owners should not be rejected, in passing upon the validity of the consequent assessment, merely because it was signed before the work was ordered.

2. CONSENT IN FORM OF PETITION. The substantial purpose of the statute is satisfied by a paper signed by the landowner clearly expressing his consent to the improvement in the mode and manner provided therein; and the writing thus signed is no less binding and sufficient because in the form of a petition.

3. EFFECT OF MORE GENERAL ACT OF 1895 UPON TONAWANDA ACT OF 1893. It was not intended by the act of 1895 (Ch. 816), enlarging and modifying the powers of town officers in certain towns, to invalidate anything which had been done under the Tonawanda highway improvement act of 1893; but the object was to provide for future local assessments by a new board, and so far the first act was superseded by the last.

4. NEW ASSESSMENT. The assessment made in 1894 under the act of 1893, for paving Delaware street, by the town board of Tonawanda, was an assessment imposed for the permanent improvement of a road under an existing law, within the meaning of the act of 1895, and therefore was subject to the performance of the duty of the new board to reassess the expense of the improvement according to the scheme of the new statute, the property owners already assessed being entitled to a new hearing before the new board.

5. OLD ASSESSMENT MERGED IN NEW. Where a new assessment for a highway improvement made by the town of Tonawanda under the act of 1893 was made under the act of 1895, upon a new hearing, and a new roll filed, the old assessment became merged in the new one and there was then but one assessment and one lien.

6. COMPLIANCE WITH STATUTE AS TO NUMBER OF CONSENTING PROP-ERTY OWNERS. *It seems*, that a petition embodying the sufficiently expressed consent of certain property owners, signed before the work was ordered, and a subsequent formal consent of other owners may be combined in satisfaction of the requirement of the act of 1893 for the consent

of the owners of at least one-half ~~of~~ the feet frontage of land on each side of the highway ordered to be improved.

7. CONSENT TO LOCAL IMPROVEMENT UNIMPORTANT WHEN HEARING AFFORDED. When the law authorizing a local assessment for a local improvement affords the property owners an opportunity to be heard at some stage of the proceeding, their consent to the making of the improvement is unimportant.

8. VALIDITY OF REASSESSMENT ON NEW HEARING NOT DEPENDENT ON CONSENT TO IMPROVEMENT. Even if an assessment made by the town of Tonawanda for a highway improvement under the act of 1893 was defective in respect to the consent of property owners, that fact does not invalidate a reassessment made under the act of 1895, which requires the local authorities to make a new assessment and gives to the property owners another opportunity to be heard.

*Jones* v. *Town of Tonawanda*, 35 App. Div. 151, reversed.

(Argued March 3, 1899; decided March 21, 1899.)

APPEAL from a judgment of the Appellant Division of the Supreme Court in the fourth judicial department, entered December 19, 1898, affirming a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to set aside two local assessments upon the lands of the plaintiff.

The facts, so far as material, are stated in the opinion.

*John Cunneen* for appellants. The referee erred in maintaining the suit to review and annul the assessment made under the act of 1895. (*Guest* v. *City of Brooklyn*, 69 N. Y. 506; *Marsh* v. *City of Brooklyn*, 59 N. Y. 280; *Matter of Hebrew Society*, 70 N. Y. 476; *Matter of Brady*, 85 N. Y. 269; *Matter of Bassford*, 50 N. Y. 509; *Matter of Voorhis*, 90 N. Y. 668; *Hynes* v. *Alexander*, 2 App. Div. 109.) The assessment made under the act of 1893, even if not superseded by the assessment made under the act of 1895, did not constitute a cloud upon the plaintiff's title which would afford adequate cause for this suit. (*Guest* v. *City of Brooklyn*, 69 N. Y. 506; *Marsh* v. *City of Brooklyn*, 59 N. Y. 280; *Matter of Hebrew Society*, 70 N. Y. 476; *Matter of Brady*, 85 N. Y. 269; *Matter of Bassford*, 50 N. Y. 509; *Matter of Voorhis*, 90 N. Y. 668; *Craig* v. *Town of Andes*, 93 N. Y. 411;

*Townsend* v. *Mayor, etc.,* 77 N. Y. 545.) The reassessment of the expense of the improvement made under the act of 1895 is valid. ( *W. I. B. Co.* v. *Town of Attica,* 119 N. Y. 204; *Spencer* v. *Merchant,* 100 N. Y. 585; 125 U. S. 345; *Hatzung* v. *City of Syracuse,* 71 N. Y. S. R. 552; *People ex rel.* v. *Wilson,* 21 N. Y. S. R. 120; *Matter of D. & H. C. Co.,* 60 Hun, 204; *Knapp* v. *Town of Newtown,* 1 Hun, 269; *McLaughlin* v. *Miller,* 124 N. Y. 510; *Town of Guilford* v. *Bd. Suprs.,* 13 N. Y. 143; *People ex rel.* v. *Bd. Suprs.,* 70 N. Y. 235; *Bd. Suprs.* v. *State,* 153 N. Y. 279.) The referee erred in holding that the original petition to the town board to make the improvement did not operate as the written consent of the signers within the meaning of section 4 of the act of 1893, and, therefore, his conclusion of fact that the required consents were not given, is based on an error of law. ( *Miller* v. *City of Amsterdam,* 149 N. Y. 288; *Cornierais* v. *Wessolhoeft,* 114 Mass. 552.)

*Ralph A. Kellogg* for respondent. The "consent, in writing, of the owners of at least one-half the actual feet frontage of land on each side" of the street improved, required by chapter 550 of the Laws of 1893, was not, in fact, obtained. ( *Miller* v. *City of Amsterdam,* 149 N. Y. 288; *Newell* v. *Wheeler,* 48 N. Y. 486; *Hopkins* v. *Mason,* 61 Barb. 469; *Matter of Ford,* 6 Lans. 92; *Morse* v. *Williamson,* 35 Barb. 472; *People* v. *City of Utica,* 58 How. Pr. 136; *Merritt* v. *Vil. of Portchester,* 71 N. Y. 309; *Sharp* v. *Speir,* 4 Hill, 76; *Sharp* v. *Johnson,* 4 Hill, 92; *Auditor-General* v. *Fisher,* 84 Mich. 128.) The respondent contended upon the trial, and confidently insists now, that the vendee, under a contract for the sale of land, is not the "owner" within the meaning of this section 4 of the statute of 1893. ( *Watson* v. *N. Y. C. R. R. Co.,* 47 N. Y. 161; *Smith* v. *Ferris,* 6 Hun, 553; *Mayor, etc.,* v. *Boyd,* 64 Md. 11; *Mulligan* v. *Smith,* 59 Cal. 207; *Ruggles* v. *Inhab. of Nantucket,* 11 Cush. 433; *Wright* v. *Bennett,* 4 Ill. 258; *Davis* v. *Cincinnati,* 36 Ohio St. 26; *Tracy* v. *Reed,* 38 Fed. Rep. 69; *Frank*

v. *Arnold*, 73 Iowa, 370 ; *People ex rel.* v. *Smith*, 45 N. Y. 772.)
The failure to obtain the required consent of the abutting own-
ers was not a mere irregularity but a jurisdictional defect,
which rendered all the proceedings in making this improve-
ment and the assessment of 1894 void *ab initio.* (*Miller* v.
*City of Amsterdam*, 149 N. Y. 288 ; *Sharp* v. *Speir*, 4 Hill,
76 ; *Jex* v. *Mayor, etc.*, 103 N. Y. 536 ; *Lathrop* v. *City of
Buffalo*, 3 Abb. Ct. App. Dec. 30 ; *Holland* v. *Baltimore*,
11 Md. 186 ; *Caywin* v. *Town of Hancock*, 84 N. Y. 532 ;
*Nat. Bank of Chemung* v. *City of Elmira*, 53 N. Y. 49 ;
Dillon on Mun. Corp. [4th ed.] § 800 ; *Newell* v. *Wheeler*, 48
N. Y. 486 ; *Conde* v. *City of Schenectady*, 29 App. Div. 604 ;
*People ex rel.* v. *City of Brooklyn*, 71 N. Y. 495.) The
assessment of 1895 was not authorized by law, was levied with-
out jurisdiction and is invalid. (*Miller* v. *City of Amster-
dam*, 149 N. Y. 288 ; *Newell* v. *Wheeler*, 48 N. Y. 486 ; *Hop-
kins* v. *Mason*, 61 Barb. 469 ; *Matter of Ford*, 6 Lans. 92 ;
*Morse* v. *Williamson*, 35 Barb. 472 ; *People* v. *City of Utica*,
58 How. Pr. 136 ; *Merritt* v. *Vil. of Portchester*, 71 N. Y.
309 ; *Sharp* v. *Speir*, 4 Hill, 76 ; *Sharp* v. *Johnson*, 4 Hill,
92 ; Sedg. on Stat. & Const. Law, 352–354 ; *People ex rel.*
v. *City of Brooklyn*, 71 N. Y. 495.) The respondent was
entitled to maintain this action in equity for the relief
demanded in the complaint and granted by the judgment
appealed from. (*Miller* v. *City of Amsterdan*, 149 N. Y.
288 ; *Clark* v. *Vil. of Dunkirk*, 12 Hun, 181 ; *Hatch* v. *City
of Buffalo*, 38 N. Y. 276 ; *Rumsey* v. *City of Buffalo*, 97 N.
Y. 114 ; *Newell* v. *Wheeler*, 48 N. Y. 486 ; *Astor* v. *City of
New York*, 62 N. Y. 567 ; *T. G. Sem.* v. *Cramer*, 98 N. Y.
121 ; L. 1895, ch. 816, § 48.)

O'BRIEN, J. The judgment in this case annuls a local
assessment for a local improvement on the ground that it was
void, but an apparent lien upon the plaintiff's property. The
questions presented by the appeal involve the construction
and legal effect of two statutes, which prescribe the various

powers and duties of the local authorities with respect to this assessment. These enactments are chapter 550 of the Laws of 1893 and chapter 816 of the Laws of 1895. The former is a local law, applicable only to the town of Tonawanda in which the highway in question is wholly situated, extending from the limits of the village of that name about three miles to the limits of the city of Buffalo, and practically constitutes an extension of Delaware street, in the latter city, to the village referred to. Hence, the highway is designated in the case as Delaware street or Delaware road.

It is quite clear that the purpose of the statute was to authorize this street or road to be drained, graded and paved at the expense of the local property owners. It was so graded, drained and paved in the year 1894, and an assessment for the expense of the work was apportioned upon the property fronting the highway on each side. The act of 1895 is a general law, in terms applicable to all towns with a population of three thousand or more, situated within a county having a population of three hundred thousand or more, excluding New York and Kings counties, and adjoining a city having a population of over two hundred and fifty thousand inhabitants, so that it is conceded to be operative in the town in question and in, at least, three other towns in Erie county adjoining the city of Buffalo. It became a law on the 29th of May, 1895, and embodies a comprehensive scheme for the improvement of highways in towns by local assessments, differing in many details from the act of 1893, which applied to but one town.

It is not necessary now to point out wherein, or in what respect the two statutes differ in their provisions. It is quite sufficient for the purposes of this case to note that the latter conferred certain powers and imposed certain duties, with respect to future assessments made under it, and also with respect to assessments made under any prior law, unpaid at the time of its passage. The scope and operation of the law upon old assessments must be referred to hereafter, and hence it is now sufficient to observe that the earlier statute was

intended to authorize this particular improvement, while the latter is much broader in its scope and applicable to all such assessments to be thereafter made in the towns comprehended within its terms, and at the same time requires old assessments remaining unpaid to be reassessed upon a new hearing to the property owners interested. The assessment in question imposed under the provisions of the act of 1893 was, therefore, reassessed under the act of 1895, after another hearing given to the property owners. The learned referee, to whom the case was referred, held, as we understand his decision, that there were two assessments, one imposed under the earlier act, and another for the same expense under the latter act, and that both were void. The judgment entered upon his report having been affirmed at the Appellate Division, it becomes necessary for us to examine the grounds of the decisions with some care.

The only defect claimed to exist in this assessment under the act of 1893, is the absence of the consent in writing of the owners of the property on each side of the street that the statute clearly requires in section four, which reads as follows : "When any such improvement shall have been determined upon and ordered as aforesaid, the same shall have no force or effect until the consent in writing shall be obtained of the owners of at least one-half of the actual feet frontage of land on each side of any highway ordered as aforesaid to be improved, excepting therefrom the space occupied by highways crossing the same." The learned referee held that this section was not complied with, and his conclusion on that point presents a question of law arising upon undisputed facts. The statute authorizes the town board to meet and determine the probable expense of the improvement and to make an order reciting in general terms the nature and cost of the work. It then requires the order to be published in the manner specified with a notice to all persons interested to appear before the board at a time and place specified to make objections, if any they have, to the proposed improvement, and the board is empowered, after a reasonable hearing of all the parties in interest,

to reverse, affirm or modify the order. The provisions of the statute with respect to the making of the order, the publication of the same with notice for a hearing and the hearing of objections were all complied with, and the board thereafter affirmed its original action. The first order or determination of the board to make the improvement was made on the 3d day of July, 1893. It is admitted that on the 29th of July, 1893, a paper was filed with the board containing the consent of the owners of the necessary frontage, except a little over three thousand feet, and to that extent the consent fell short of the requirements of the law. But the validity of the assessment does not depend entirely upon this consent of the property owners, since it appears that on the third day of July, being the same day on which the first order or determination of the board was made, another paper was filed containing the signatures of various other persons and corporations owning land fronting the street on both sides. If this paper was in form and substance a sufficient compliance with the statute, there is no doubt that, upon the construction which the referee gave to the term "owners," and properly, as we think, that both papers represented the written consent of the owners of much more than the requisite feet frontage.

It becomes necessary, therefore, to determine whether this instrument was not a sufficient compliance with the terms of the section above quoted. It is in the form of a petition, addressed to the town board of the town, and stated in substance that the undersigned owners of land fronting on this highway hereby petition the board to order and cause said street or highway to be paved to the width of forty feet pursuant to the provisions of chapter 550 of the Laws of 1893 authorizing the paving of the same. The paper is then signed by ten corporations and at least twenty-six individuals, described as the owners of lands fronting on the highway, and it appears to have been filed with the clerk of the board on the 3d day of July, 1893. The learned referee held, as matter of law, that this instrument was not evidence of the consent of the property owners within the meaning of the

statute, and he having rejected it, it was found that the other paper referred to did not contain the consent of the owners of the requisite frontage, and from these premises the conclusion was reached that the assessment was without jurisdiction and, therefore, void.

We think that the decision of the learned referee rejecting the paper in the form of a petition, filed in the early stages of the proceedings, was erroneous. It rests upon a construction of the fourth section of the statute, which is not warranted by the language there found. It is quite obvious, from a careful reading of this section, that a written instrument, which in form and substance was sufficiently expressive of the consent of the property owners, should not be rejected merely because it was signed before the passage of the resolution ordering the improvement. There is nothing in the section, when fairly construed, that disables the property owner from giving his consent before the determination to make the improvement was made, as well as afterwards, providing such consent is expressed in words sufficient to indicate the purpose for which it was given. What the section means is that the proceedings to impose the burden shall have no force or effect until the consent in writing of the property owners has been obtained. It is not claimed that the paper in question did not, in form and substance, sufficiently express the consent of the parties signing it. It was sufficiently clear and explicit for that purpose, and the fact that the paper was signed before the work was ordered is, therefore, of no consequence. The time when the consent in writing is given, whether before or after the improvement is determined upon or ordered, is not material, providing that it is clear that the parties consent to the exercise of the powers conferred by the statute to improve the road in the manner therein indicated. It is true that by a subsequent part of the section the consent must be given before the bonds of the town are issued. But it is not necessarily rendered invalid by the mere fact that it may have been given at even an earlier day and before the work was ordered. In other words, it is competent for the property owner to give

his consent in advance of any action on the part of the board and for the very purpose of stimulating its action. So long as the paper manifests the consent of the owner to have his property burdened with the assessment authorized by the statute, it is quite immaterial whether it was dated or signed before or after the passage of the resolution to make the improvement. At any time after the passage of the law the owner could file his consent to have it go into operation, so far as he was concerned. When the town made the improvement as requested, and issued its bonds to pay for it, no one signing a paper of that character could avoid the assessment on the ground that the consent was prematurely given. The property owner could select his own time for giving the consent required by the statute, and having given it, and the authorities having acted upon it by making the improvement and incurring the expense, it cannot and ought not to be held, when an assessment is imposed under such circumstances, that the consent is void.

There is no restriction or limitation in the statute with respect to the time when the written consent shall be signed or delivered, except the provision that the bonds shall not be issued until it is given. The substantial purpose of the statute is satisfied by a paper signed by the landowner clearly expressing his consent to the improvement in the mode and manner provided therein. The writing thus signed is no less binding and sufficient because in the form of a petition, nor is its legal effect changed by the fact that it is not only a consent but a request as well. The statute might indeed have provided that the paper should be signed only at a particular time, and, unless signed at that time, should not be effectual as a consent, but obviously it has not done so, and yet the ruling below was, in effect, that the property owner could not give his consent at all until after the determination of the town board to make the improvement. The ground upon which the paper, called a petition, was rejected as proof of the required consent, appears to be that the statute evidently contemplated that it should be given only after, not only the

determination to make the improvement, but after the land-
owners had been informed by publication of the proceedings
what the character and cost of the work was to be, and not
until then could they determine whether it would be in their
interest to burden their property with the improvement.   It
is obvious, however, that this argument is faulty, since it
proves altogether too much.   The owners of the land could
not acquire this information, at least with anything like accu-
racy, until the contracts for the work had been made, and it
would follow that the local authorities could never know
whether the necessary consents would be given until after
they had entered into the contract.   It must be borne in
mind that the question is not whether it was irregular to file
this paper prior to the making of the first order, but whether,
in form and substance, it expresses, in writing, the consent of
the parties interested that the statute should be put into
operation.   The owners of the land must be presumed to
have known what the law was and the object which the stat-
ute was intended to accomplish, and when they requested the
board to put this very statute into operation, which must
result in placing the burden upon their own property, the con-
clusion is irresistible that they consented to the proceedings
within the fair meaning of the statute.   Moreover, it should
be noted that the law required notice to the property owners
of the subsequent proceedings, including the imposition of
the assessment, and gave them an opportunity to be heard at
every stage.   It does not appear that any of the parties who
signed the petition, or any one else, made any objection upon
the ground that the paper was insufficient as a consent, and it
would be manifestly unjust to the taxpayers of the town to
permit the property owners in this locality to evade the bur-
den after their property had received all the benefits of the
improvement, and after the bonds of the town had been
issued and sold to pay for it.   So we conclude that the assess-
ment made under the act of 1893 was in compliance with the
statute.

It is not important to determine how far the act of 1893

was repealed by the act of 1895. It is obvious that it was
not intended by the latter statute to invalidate anything which
had been done under the prior one. The object was to pro-
vide for future local assessments in certain towns by a new
board, and so far the first act was superseded by the last.
But the act of 1895 operated upon the assessment in question
in at least two important particulars, since it was provided
that, where any highway within any town embraced within
its scope had been paved or permanently improved under any
law providing for a local assessment to pay the expense of
such improvement, such highway should be subjected to the
control and management of the new board. The assessment
in question, made under the act of 1893, was one imposed for
the improvement of a road under an existing law, within the
meaning of section 27 of the new act, and that section required
at least two things to be done. These were (1) the perform-
ance of the duty of the new board to reassess the expenses of the
improvement already made upon the property owners accord-
ing to the scheme of the new statute. (2) It conferred upon
the property owners already assessed the right to a new hear-
ing before the new board, which might, and actually did,
result in a new apportionment of the expenses. From the
duty imposed upon the new board to make a new assessment,
and the right given to the property owners to have a new
hearing before such board, the implication is irresistible that
the new law had the effect to suspend the collection of the
old assessment until the proceedings required by the new stat-
ute had been perfected. The new assessment having been
made upon a new hearing and a new roll having been filed, in
which at least some slight changes were made in the appor-
tionment of the expense upon the new hearing of all the
parties interested, it is obvious that the old assessment became
merged in the new one, and there was then, in fact and in
law, but one assessment and one lien and not two assessments
or two liens. The fact that two rolls had been made and
filed is, under such circumstances, entirely immaterial, since
both rolls, when taken together, informed the property owner

of the true amount which he was required to pay as his share of the expense of the improvement.

It may be said that this leaves open for further controversy the question whether, in fact, the two papers referred to contained the requisite consents of the property owners. This case has been argued and submitted upon the assumption that they did, and that had the referee given effect to the paper first filed the conclusion of fact that the statute had been complied with was inevitable. There remains, however, another view of the case which may be important to notice. The taxing power, in all its plenitude, resides in the legislature. In the exercise of that power it may undoubtedly impose upon property in a locality an assessment for the expense of a local improvement, either by its own direct action or through the medium of local authorities. This power may be lawfully exercised without the consent of the property owners. All that is necessary is that, at some stage of the proceeding, they shall have an opportunity to be heard. When the law recognizes that right their consent to the making of the improvement is unimportant. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Spencer* v. *Merchant*, 100 N. Y. 585; *S. C.*, 125 U. S. 345.) The legislature, therefore, had the power, even if the assessment under the act of 1893 was in any respect defective, to reassess the tax by its own direct action upon the property benefited, upon notice to the owners and a reasonable opportunity to be heard. Whatever the legislature could do in this respect itself could be delegated to local authorities. And we think that was the effect of section twenty-seven of the act of 1895, since it requires the local authorities to make a new assessment and gives to the property owners another opportunity to be heard before that board.

Our conclusion, therefore, is that the assessment in question is valid and that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed, etc.