### LYON v. TOWN OF TONAWANDA et al.

(Circuit Court, N. D. New York. December 18, 1899.)

1. CONSTITUTIONAL LAW—ASSESSMENTS FOR PUBLIC IMPROVEMENTS—FRONT-FOOT RULE.

An assessment made pursuant to a state law, for grading and paving a highway, which apportions the entire cost of such improvement upon the abutting land according to the front-foot rule, without regard to the size and value of the parcels or the special benefits accruing therefrom, is in violation of the fifth and fourteenth amendments to the constitution of the United States.

2. INJUNCTION—SUFFICIENCY OF BILL.

If it be conceded that a statute providing for assessments on abutting property for street improvements according to the front-foot rule does not necessarily exclude all consideration of benefits, or result in unjust or inequitable assessments, it at least authorizes such assessments; and a bill filed by a property owner for an injunction against the enforcement of an assessment made thereunder is not subject to demurrer, where it alleges that the assessment was in fact unjust and unequal, and made without regard to benefits.

3. EQUITY—LACHES.

A delay by a property owner of four years after the making of an assessment against his property for the cost of street improvements before bringing a suit to enjoin the enforcement of such assessment does not constitute laches which will defeat his right to relief in equity, where no steps were taken to subject the property to sale for such assessment until immediately prior to the commencement of the suit, and where, during most of the time subsequent to the assessment, other suits involving its validity were pending in the courts of the state, and efforts were also being made to obtain relief by legislation.

4. ESTOPPEL—SIGNING PETITION FOR STREET IMPROVEMENT—PRIVITY IN TITLE.

The fact that an owner of property, subject to a purchase-money mortgage, joins in a petition for the improvement of a street upon which such property abuts, does not estop a subsequent owner, who acquires title through a foreclosure of the mortgage, from contesting the validity of the assessment made for such improvement.

5. PRELIMINARY INJUNCTION—GROUNDS—SUIT TO ENJOIN SALE OF PROPERTY.

A suit by a property owner to restrain the sale of his property under an assessment for a street improvement claimed to be illegal is one in which a preliminary injunction is essential to the efficacy of the relief sought, and such injunction should be granted where the bill makes a probable case to entitle the complainant to final relief.

On Motion for a Preliminary Injunction and on Demurrer and Plea to the Bill.

The complainant is a citizen of the state of New York. The defendant, the town of Tonawanda, is a municipal corporation of the county of Erie and state of New York, and the defendant Patten is the supervisor of the said town. The parties are all residents of the Northern district of New York and the jurisdiction of this court is invoked solely upon the theory that a federal question is involved.

The important allegations of the bill may be stated briefly as follows: The complainant is the owner of two parcels of land known as Nos. 59 and 62, situated in the town of Tonawanda and bounding on Delaware street, which is a public highway of said town, connecting the village of Tonawanda and the city of Buffalo. In the year 1893 it was decided to pave said street with vitrified brick at an expense of $232,791 and in order to pay the said amount the complainant and other owners of land abutting on the said street were assessed, pursuant to chapter 550 of the Laws of New York for 1893, according to the lineal feet fronting on said highway and without reference to the value of the land or the benefit conferred thereon. All the steps required to be taken under said law were taken, except to advertise and sell the property, and thereafter nothing was done until the year 1895 when the legislature passed another act relating to the subject. Chapter 816 of the Laws of 1895. This act creates a town board and provides as follows (section 27): "The said board is hereby authorized and empowered, and it shall be its duty to cause to be assessed the entire expense of the improvement aforesaid upon the several lots or parcels of land fronting or bounding upon that part of the highway so improved aforesaid, and in the manner provided by this statute for making local assessments for raising the expenses of grading and paving of streets; and pursuant to the rules of apportionment and division of the expense herein provided."

By section 30 of the act the expenses of local improvements for paving or macadamizing a highway are assessed "upon the lots fronting or bounding on both sides of that part of the highway in which the improvement shall be made. Frontage assessments shall be apportioned as follows: So much of the expense of the improvement shall be raised from each separate lot or parcel of land as shall be in the same proportion as the entire expense locally assessed, as the number of feet for which the lot shall bound or front upon that part of the street in which the improvement shall have been made, shall be to the aggregate number of feet of frontage or bounds to be subjected to the entire assessment."

Under this law the complainant's lands were again assessed for the paving of said Delaware street upon the basis of foot frontage, as prescribed by both of said acts, namely, "on each of said lots and parcels of land in the same proportion to the entire expense locally assessed as the number of feet for which said lot or parcel of land bounded and fronted upon that part of the street in which the said improvement had been made, was to the aggregate number of feet of frontage or bounds subjected to the entire assessment, which said assessment upon parcel No. 59, now owned by your orator, was $5,207.16, and on parcel No. 62 was $5,206.26." These amounts with interest added are respectively $7,929.30 and $7,924.74, no part of the same having been paid. The defendant Patten, as supervisor, advertised the said lots for sale on the 14th of September, 1899, and will proceed to sell the same at auction unless restrained by injunction.

The lots assessed for the said pavement are of unequal value, size and depth, are not benefited equally, and "under the terms and conditions and the rule and basis of levying said assessment, it was impossible for the boards and officers making said assessments to levy and apportion said assessments in proportion to the benefits received by each parcel of land assessed to pay for said improvement of grading and paving said street, or in any other way, except in the arbitrary manner and method of assessing in such proportion to the entire expense assessed as the number of feet which any lot shall bound or front upon that part of the street in which the improvement shall have been made, shall be to the aggregate number of feet of frontage or bounds to be subjected to the entire assessment, and that thereby, and unless the sale thereof be enjoined and restrained by the decree of this court, the lands and property of your orator hereinbefore mentioned, will be taken for public use

without just compensation, and your orator will be deprived of his said lands and property without due process of law, contrary to the provisions of the constitution of the United States." The bill further alleges that the said lots will not sell for enough to pay the amounts assessed against them and that the deficit will be levied in a general tax upon the lands of said town. The complainant owns land in said town other than the two parcels bounding on Delaware street as aforesaid which land will thus be subjected to unequal and unjust taxation and in certain contingencies will be sold to discharge said tax, contrary to the provisions of the constitution of the United States. The bill states as a reason for not bringing this action sooner the pendency of various suits and proceedings in the state courts and in the legislature which proved abortive a short time prior to the filing of the bill. The complainant's lands were not advertised for sale and no active steps were taken to collect said assessment until on or about the 1st of August, 1899. The bill prays for a decree declaring the state acts, requiring the assessment for the said pavement to be made by the front-foot rule, to be contrary to the provisions of the constitution of the United States, and enjoining the defendants from collecting the said assessment.

The defendants filed a demurrer with which a plea is united.

The grounds of the demurrer are as follows: First. No cause of action in equity is stated in the bill. Second. The complainant is guilty of laches in not appearing on the return day of the notice given, pursuant to the provisions of the two acts in question, and objecting to the said improvements upon the grounds now stated as invalidating the assessments. Third. The complainant is guilty of laches in not having applied to the town board for relief and in not having taken proceedings provided for by the laws of the state to review the assessments and test the constitutionality of the statutes in controversy. Fourth. The complainant has an adequate remedy at law. Fifth. There is a defect of parties for the reason that the other abutting landowners, as well as the owners of the bonds issued for said improvements, should have been made complainants or defendants.

The plea alleges that in 1893 the Columbia Land Company, the then owner of the complainant's lots, petitioned the town board to make the improvements in question and did not object to the same at any stage of the proceedings, but, on the contrary, consented to the improvements and ratified and confirmed the action of the town board in making the same; that' when the assessment was made under the statute of 1895 neither the complainant nor those in privity with him appeared before the board, pursuant to' notice, and objected to the assessment roll and no action was taken to review the same, as provided by the laws of New York, and no action was begun to have the same declared illegal until March of the present year; that this delay and inaction upon the part of the complainant and his predecessors amounts to laches which should bar a recovery. The plea was subsequently modified or amended by a stipulation between counsel stating the facts regarding the complainant's title to the land in question.

It thus appears that the Columbia Land Company, at the time the petition for the improvements to Delaware street and the consent to said improvements were filed by said company with the town board, was the owner of said land subject to three purchase-money mortgages; that these mortgages were, in the autumn of 1897, foreclosed and the land purchased at the foreclosure sale by the complainant and two other parties who subsequently conveyed their interest to the complainant, who is now the owner and holder of the legal title to said land.

The demurrer admits all of the allegations of the bill to which the demurrer applies and, as issue was not joined upon the plea, the same being set down for argument, the allegations of the plea must also be taken as admitted. The somewhat anomalous character of the defendants' pleading, combining as it does the characteristics of a demurrer, a plea and an answer, presents the curious spectacle of the defendants admitting certain allegations of the bill to be true and the complainant admitting allegations of the plea to be true which are in irreconcilable conflict with the admitted statements of the bill. However, this situation applies only to some of the minor features of the controversy, the salient facts being admitted on both sides.

The cause was argued on September 23, 1899, at the Buffalo term, but for the convenience of counsel it was not finally submitted until November 14, 1899, many other causes having, in the meantime, obtained a preference.

Tracy C. Becker, for complainant.
John Cunneen, for defendants.

COXE, District Judge (after stating the facts as above). This controversy is presented to the court upon what is practically an agreed state of facts. The fundamental question is whether or not an assessment, made pursuant to a state law, for grading and paving a highway, which apportions the entire cost of such improvement upon the abutting land according to the front-foot rule, without regard to the size and value of the parcels or the benefits derived from such improvement, is contrary to the fifth and fourteenth amendments to the constitution of the United States? If this question has been decided by the courts of the United States it is the duty of this court to follow these decisions, even though the courts of the state may have decided otherwise. The leading authority is Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. The facts, of course, differ somewhat from the facts in the case at bar. but that the broad principle there enunciated is applicable cannot be successfully controverted. The opinion of the court contains an exhaustive review of the judgments of state and national courts and the opinions of eminent text writers on the subject and reaches conclusions which may be summarized as follows:

First. Abutting owners may be subjected to special assessments to meet the expenses of opening and improving public highways upon the ground that special and peculiar benefits accrue therefrom, and the legislature has a wide discretion in defining the territory to be deemed specially benefited.

Second. The principle underlying special assessments of this character is that the property is peculiarly benefited and, therefore, the owners do not pay anything in excess of what they receive by reason of the improvement. Legislative power is limited by this principle. The protection of private property would be seriously impaired were the rule established that the legislature may assess such property by the front foot with the entire cost of an improvement whether the property is in fact benefited or not.

Third. "The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation." Any substantial sum taken from the landowner beyond the exceptional benefit received by him is extortion. Although the legislature may prescribe the rule for the apportionment of benefits, this rule must be one under which it is legally possible that the burden may be distributed justly and equally. While abutting property may be assessed for improvements to a public street in front of it such assessment must be measured by the special benefits accruing to such abutting property, namely, benefits not shared by the general public. The taxing of private property for profits and advantages

which accrue exclusively to the public at large and which confer no benefits upon the property so taxed is taking private property for public use without compensation.

Fourth. Where an assessment is illegal because it rests upon a principle which excludes the consideration of benefits to the land assessed, it is unnecessary for the owner, as a condition of obtaining relief in equity, to pay or tender such a sum as he may concede due upon an assessment properly and legally made.

The case presents considerations of peculiar and extraordinary hardship, but there is nothing to indicate that the court intended to limit the broad principles enunciated to any particular state of facts. At least two of the circuit courts have, since the decision, applied its doctrine to facts closely approximating the case in hand.

In Fay v. City of Springfield (C. C.) 94 Fed. 409, the cost of repaving a street in Springfield, Mo., was assessed, according to the front-foot rule, upon lots fronting on the street without regard to the question whether or not the various parcels of land were benefited to the extent of the assessment. The learned district judge, after a careful review of the entire situation, reached the conclusion that the case before him was ruled by the judgment in Norwood and Baker. The opinion concludes as follows:

"Equality is equity. And the right of the owner of a lot to have this burden of special tax ratably distributed among the lots benefited, does not depend alone upon the state constitution, exacting equal taxation, but has 'its foundation in those elementary principles of equity and justice which lie at the root of the social compact' (In re Canal Street, 11 Wend. 154–156), and he can, therefore, invoke, for his security and protection, the federal constitution, which prohibits, not only the taking of private property for public use without just compensation, but the deprivation thereof without due process of law, and denies to the state the power to 'deny, within its jurisdiction, the equal protection of the laws.' Following what I conceive to be the ruling of the supreme court in the Village of Norwood Case, supra, the temporary injunction asked for is granted."

To the same effect is Loeb v. Trustees (C. C.) 91 Fed. 37.

It is argued that the Norwood Case is inapplicable for the reason that the Ohio statute provided three alternative methods of assessment, namely: First, in proportion to the benefits; second, according to the value of the property; and, third, by the front-foot rule; while the statute under consideration here provides only for the assessment upon the lots fronting or bounding upon both sides of the highway. It is said that the village authorities having adopted the front-foot rule under the Ohio statute necessarily excluded the consideration of benefits received, while in the case at bar the statute permitted the board to consider the benefits to the land and that they may have done so and, thereafter, have fixed upon the front-foot rule as the most equitable method of apportioning these benefits.

It is thought that this construction is contrary to the plain provisions of the law. Section 30 of the act of 1895 makes no reference whatever to any mode of taxation based upon the value of the property or which takes into consideration the benefits conferred. There is no affirmative authorization for proceeding except by the front-foot rule. The section begins with the following provision:

"The expenses of local improvements shall be assessed as follows. For building or repairing sidewalks, by frontage assessment upon the lots in front of which the walk shall be constructed or repaired."

It is argued that because the word "frontage" is here used the elaborate provision for the apportionment of "frontage assessments" found at the end of the section applies only to sidewalks. Such a construction violates several well-known canons of statutory interpretation. It eviscerates the section leaving it ambiguous, if not inoperative, as to the more important subjects treated by it. The section provides that the expenses for paving a highway shall be assessed upon the lots fronting or bounding thereon and then declares that frontage assessments shall be apportioned by the front-foot rule. An assessment upon lots fronting on a highway is "a frontage assessment" to the same extent as if the words quoted had been used. That the front-foot rule does not relate to sidewalks only is manifest from the language of the last clause of the section. The language requiring the assessments to be levied in proportion as the number of feet "bound or front" upon the street probably refers to the local improvements mentioned in all the preceding clauses; it certainly refers to "lots fronting or bounding" on the street, as described in the clause which immediately precedes it. If the legislature had substituted the words "assessments upon lots fronting on the street" for "frontage assessments," so that the sentence in question would read, "assessments upon lots fronting on the street shall be apportioned as follows," there could be no possible pretense for the contention of the defendants. And yet it is thought that this was unquestionably what the lawmakers meant. Any other construction leaves the section without any definite and certain provision regarding assessments for the most important improvements sanctioned by the law. An interpretation which renders an act meaningless or obscure should always be avoided. That the construction here approved was recognized by all as the proper one prior to the rise of this controversy is demonstrated by the fact that the board, acting upon the advice of counsel learned in the law and familiar with all the facts, assessed the complainant's lots according to the front-foot rule.

We have then the fact, alleged in the bill, admitted by the demurrer, conceded in the brief, that the complainant's land was assessed by the front-foot rule under a statute which certainly authorized if it did not command this mode of apportionment.

Why then does not the following language of Norwood and Baker apply?

"It thus appears that the statute authorizes a special assessment upon the bounding and abutting property by the front foot for the entire cost and expense of the improvement without taking special benefits into account, and that was the method pursued by the village of Norwood. The corporation manifestly proceeded upon the theory that the abutting property could be made to bear the whole cost of the improvement, whether such property was benefited or not to the extent of such cost. * * * Taxation of the abutting property for any substantial excess of such expense over special benefits will, to the extent of such excess, be a taking of private property for public use without compensation."

The New York law in failing to provide any method for ascertaining and apportioning benefits resembles the Missouri statute consid-

ered in the Fay Case, supra, more closely than the Ohio statute. Of the Missouri law the court says:

"As persuasive proof that it was not in the mind or purpose of the framers of the Missouri statute that any such ascertainment should enter into the apportionment, no method whatever is provided therefor; and the ordinance adopted by the city council clearly enough shows that the matter of relative betterments as a basis for the apportionment, was not contemplated or provided for."

But it is argued that though the rule adopted may lead to inequitable results there is nothing to show that this has been the case here. The frontage assessment may have been the most equitable and just that could have been adopted and unless the complainant can show injury he cannot maintain his bill. It is contended that when the legislature adopts a method of apportionment, as in the statute at bar, it decides the proportion in which the land will be benefited.

Assuming that, since the decisions of the United States courts, these questions are open for discussion and that the court may say that the arbitrary front-foot rule is a rule under which special benefits are not necessarily and uniformly excluded, it is thought that the arguments are not availing at the present time. It should be remembered that this question is presented upon demurrer, all the allegations of fact in the bill being admitted. It is true that these allegations are not as specific upon the question now under consideration as they might be, but the bill unquestionably avers that the abutting lots were not benefited equally; that they were of unequal value, size and depth; and that they were unjustly and unequally assessed. Under this allegation the complainant will be permitted to show the facts as they actually exist. For instance, he may be able to prove that the Delaware street pavement was an unquestioned benefit to the village of Tonawanda, the city of Buffalo and to the terminal property, but a distinct disadvantage to the intervening land. It may be shown that the grade was so raised or lowered in front of the complainant's lots as to render them practically worthless for residential or business purposes. It may be shown that some of the property on the line is improved and of great value and other parcels are swamp land, not even available for farming; that some of the lots are 5,000 feet deep and others 500 feet deep; that some are worth $5,000 and others, of equal frontage, are worth but $500. Again, the complainant might prove that the grading and paving of the street so interfered with proper drainage that, whereas his land prior thereto had yielded him large profits, it is now under water and valueless. These conditions are, of course, conjectural and are suggested to illustrate the impossibility of determining upon demurrer that benefits to the assessed property were considered under the rule of apportionment adopted by the board.

If the complainant should show that the building of the highway left his property 20 feet below the surface of the street it could hardly be contended that, as to him, the rule "was the most just and equitable that could be adopted." On the other hand, should it appear that the front-foot rule properly and justly distributed the

burden upon the property benefited, the doctrine of the authorities cited by defendants would be applicable.

Counsel for the defendants has shown great diligence in collecting the adjudged cases, and that many of them sustain the propositions for which he contends may well be conceded. No more careful and painstaking exposition of the law from his point of view could be presented. All of these authorities are, however, prior to the cases cited at the beginning of this decision and must yield to the paramount authority. Reluctant as this court is to interfere with proceedings instituted under state authority there is no alternative when those proceedings are prohibited by a tribunal before whose judgments all must bow. After an earnest endeavor to give full weight to all that has been urged in favor of the defendants the court is unable to distinguish upon principle the case at bar from the Norwood Case and the circuit court cases which have applied the doctrine there enunciated.

It is insisted by the defendants that the long delay in seeking redress amounts to inexcusable laches which should prevent any relief from being granted. As the act under which the present assessment was levied was not passed until May, 1895, it is unnecessary, in considering this question, to discuss occurrences prior to that date. This proposition seems too plain for debate and is, it would seem, conceded by the defendants.

As to the assessment in dispute the act of 1895 superseded the act of 1893. "It should be borne in mind," says the defendants' brief, "that the assessment made under the act of 1893 has been abandoned; that the assessment, which defendants are enforcing, is the one made under the act of 1895, * * * so that we are only concerned about the validity of the assessment made under the power last mentioned." The complainant could not, therefore, have attacked the former assessment. The defendants made that course not only unnecessary but impossible; they abandoned the assessment, leaving the complainant with no grievance and no cause of action. But four years are, then, to be accounted for. The bill alleges that the reason this action was not sooner commenced was—First. The pendency in the state court of actions to set aside the assessment. Second. Efforts at various times to procure the assistance of the legislature. Third. An agreement between the landowners and the town authorities to suspend affirmative action on both sides until the decision of the court was announced or until the legislature had passed an act providing for a fair and just apportionment.

The case of Jones against these defendants (158 N. Y. 438, 53 N. E. 280) was not decided by the court of appeals until March 21, 1899. No active steps were ever taken to collect the assessment until about the 1st of August, 1899, and within six weeks thereafter this action was commenced. No laches can be predicated of these admitted facts. The complainant had a right to rely upon the pendency of other proceedings and the understanding on all hands to await their determination. Indeed, it may well be doubted whether, in any event, he was called upon to act until his property was actually threatened. Had he not a right to assume that the defendants would

not attempt to collect an illegal tax and rest upon this assumption until some overt act was committed? If the complainant had begun this suit while all parties were endeavoring to reach a just apportionment he would probably have been denounced as an impertinent and perniciously active interloper who had failed to keep faith with the defendants and who had complicated the situation by an unnecessary and vexatious litigation. One who fires on his adversary during the existence of an armistice should not be encouraged but denounced as an outlaw.

The most cogent argument advanced by the defendants, in the judgment of the court, is based upon the alleged estoppel growing out of the acts of commission and omission of the former owner of the complainant's land. There can be no doubt that the Columbia Land Company petitioned for, consented to and acquiesced in the improvement as originally projected. It is contended that the complainant is bound by these acts and is, therefore, remediless.

The answers are:

First. Even though the complainant was in privity with the Columbia Company, an assent to be assessed under the law of 1893 was not an assent under the law of 1895 with all its changed conditions and additional burdens.

Second. A petition for an improvement is not a petition for an illegal assessment. In all the company's acts there is nothing inconsistent with the theory that it supposed the expense of the improvement would be lawfully and justly apportioned. It did not assent to extortion or to confiscation or to the taking of its property for public use without compensation.

Third. As the law under which the proceedings were instituted was unconstitutional and void the consents given thereunder were inoperative and bound no one. That in the circumstances here, where neither the Columbia Company nor the complainant has received any advantage or retained any benefit under the law, the right to assert its unconstitutionality was not and could not be waived.

Fourth. The essential elements of an estoppel are lacking, there being nothing to show that the defendants relied upon the company's acts or were misled thereby. There is nothing to show that the petition and consent induced the improvement. For aught that appears to the contrary the pavement would have been laid precisely as it was laid if the Columbia Company had never existed. No injury to the defendants or benefit to the complainant followed from these acts.

Fifth. The complainant is not in privity with the Columbia Company. His title is derived from prior purchase-money mortgages and, since he obtained title, he has maintained a position of open and avowed hostility to what he insists is an illegal tax.

Equity recognizes and tolerates estoppels but does not encourage them; she admits them into her domains, but they are usually regarded as undesirable aliens having little in common with the other members of her family. Before saying to a suitor that his rights have been destroyed by his own act a court of equity should be certain

98 F.—24

of the rectitude of its position. The general nature of an estoppel is well stated as follows:

"An 'estoppel' may be defined in a general sense to be a preclusion of a person to assert a fact which has been admitted or determined under circumstances of solemnity, such as by matter of record or by deed, or which has, by an act in pais, induced another to believe and act upon to his prejudice. * * * Estoppels must be certain to every intent and are not to be taken by argument or reference." 11 Am. & Eng. Enc. Law (2d Ed.) 387.

It may well be doubted whether the complainant was in privity with the Columbia Land Company. His title was derived from a conveyance prior to the deed to the company. The company held only the equity of redemption and could do nothing to impair the value of a prior mortgage. The complainant's title did not come from or through the company; it came from a source which was paramount, prior and, in a sense, hostile to the company's title.

Mr. Justice Story clearly states the general rule of privity in Carver v. Jackson, 4 Pet. 1, 7 L. Ed. 761, as follows:

"The recital of one deed of title in another binds the parties and those who claim under them. Technically speaking, it operates as an estoppel and binds parties and privies; privies in blood, privies in estate and privies in law. But it does not bind mere strangers, or those who claim by title paramount to the deed. It does not bind persons claiming by an adverse title, or persons claiming from the parties by title anterior to the date of the reciting deed."

See, also, Oliver v. Piatt, 3 How. 333, 412, 11 L. Ed. 622, and Corning v. Nail Factory, 40 N. Y. 191, 203.

Assuming, however, that the Columbia Company was in privity with the complainant it is thought that the latter is not estopped from maintaining this suit. A similar claim of estoppel was advanced in Sharp's Case, 56 N. Y. 257. In overruling the claim Judge Grover made use of language which, in principle, is directly applicable to the case in hand. He says:

"It is insisted by the counsel for the appellant that the petitioner is estopped from denying the power of the board to do the work by having signed the petition asking to have it done. Upon principle, there is no basis for such an estoppel. All that the petitioner did was as a property owner to petition the board to proceed and repave the street in the mode desired by him, as he lawfully might. He made no representation to the board that the signers constituted a majority of the owners of property fronting on the street, or anything to that effect; he had a right to rely upon the performance of its duty by the board, which was upon the presentation of the petition, and before basing any action thereon, to ascertain whether the numbers who had signed were sufficient to confer jurisdiction to act. Signing or presenting it was no assertion of its sufficiency in this respect. It contained a representation that the petitioner owned property fronting upon the street and that he desired, in case a sufficient number of like owners united therein to constitute a majority, that the street should be paved with Nicholson pavement. A party is estopped only when, by his declarations or conduct, he has induced another to act upon the supposed existence of a fact, and would be in consequence injured by showing its nonexistence. There is no such element in this case. The consequence of the doctrine contended for would be to make the assessment valid upon such owners as had signed the petition, while invalid as to all others; leaving the former not only to pay their just portion of the expense, but to contribute as taxpayers to the payment of the portions which should have been imposed upon those who had not signed. The principle contended for, if generally applied, would involve most mischievous consequences. One signing a petition to the commissioners of highways, to lay out a road, would be estopped from showing that the proceedings based thereon were not legal, and hence

the road might be adjudged a legal highway as to him while it was not as to the public generally. The cases calling for its application, it is readily seen, would be quite numerous, and the consequences would create much confusion and hardship."

Upon this branch of the controversy the proposition may be broadly stated as follows: The property of A., who obtains title through the foreclosure of a purchase-money mortgage, is unlawfully assessed for a local improvement in the sum of $16,000 under an unconstitutional law. When the improvement was first proposed B. held title to the property, acquired subsequently to the date of the mortgage and subject to it. B. petitioned for and assented to the improvement under a prior statute, which, two years after its passage, was superseded, the assessment thereunder being abandoned. By the foreclosure of the mortgage B.'s title was extinguished, A. taking no title from B. In these circumstances is A. estopped from contesting the validity of an assessment made under a subsequent statute? The court is of the opinion that this question must be answered in the negative.

This is one of that class of cases where the granting of preliminary relief is inseparably linked with the final decree. The latter depends upon the former for its efficacy. Without an injunction a judgment in favor of the complainant would be a mere brutum fulmen. His property once sold he has no adequate remedy in law or equity and even should he finally succeed it will require years of litigation before his rights are finally restored. He presents a cause of action which, even from the defendants' point of view, is founded upon propositions which are entitled to the most grave and serious consideration. Manifestly it is the duty of the court not to permit the defendants at the outset to accomplish the injury which it is the object of the suit to prevent. The inconvenience to the defendants by the delay is not to be compared to the irreparable injury to the complainant if his property is taken without due process of law. If the defendants finally succeed the sale will be made with the full assurance that the purchaser will receive a valid title. Even if the court entertained a doubt upon the main propositions involved it would still be its duty to maintain the present status until these important questions are finally answered after a trial upon the facts.

Whether the difficulty can be cured by remedial legislation it is not for this court to determine. Both counsel seem to agree that it can be and it is clear that an act providing for a just and equitable reassessment based upon benefits received could not be attacked upon the present lines. The right of the legislature to intervene seems to be recognized by the court of appeals in the Jones Case, and in the Norwood Case, Mr. Justice Harlan says, at page 293, 172 U. S., page 196, 19 Sup. Ct., and page 452, 43 L. Ed.:

"It should be observed that the decree [of the circuit court] did not relieve the abutting property from liability for such amount as could be properly assessed against it. Its legal effect, as we now adjudge, was only to prevent the enforcement of the particular assessment in question. It left the village, in its discretion, to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for

so much of the expense of opening the street as was found upon due and proper inquiry to be equal to the special benefits accruing to the property.  *  *  * The decree does not prevent the village, if it has or obtains power to that end, from proceeding to make an assessment in conformity with the view indicated in this opinion."

See, also, Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682.

It follows that the demurrer and plea must be overruled, the defendant to answer within 20 days.

The motion for a preliminary injunction is granted, the complainant to give a bond in the usual form for an amount that will be fixed upon the settlement of the order.