## PARKER v. CITY OF DETROIT et al.

(Circuit Court, E. D. Michigan, S. D. July 30, 1900.)

CONSTITUTIONAL LAW—STREET IMPROVEMENT—ASSESSMENT AGAINST ABUTTING PROPERTY—BENEFITS—CITY CHARTER.

The provisions of a city charter authorizing the common council of the city to contract for grading and paving its streets, and to assess the expense thereof, except that of cross walks and intersections of cross streets, against the abutting property, according to the extent of frontage on the street improved, without any reference to the question of benefits, and providing for notice only by publication in the newspapers of the completion of the assessment roll, and that it will remain in the office of the assessors for inspection, but providing no tribunal having authority to reduce the assessments or to review the amount thereof, except for the purpose of ascertaining if they are mathematically correct, are in conflict with the fourteenth amendment to the constitution of the United States, providing that no state shall deprive any person of his property without due process of law.

In Equity.

Bacon & Yerkes, for complainant.
Charles D. Joslyn, Asst. Corp. Counsel, for defendants.

SWAN, District Judge. The bill in this cause was filed to set aside certain assessment and tax sales of complainant's land for the paving of Woodward and Blaine avenues, in the city of Detroit. It is conceded that the complainant is the owner of the property assessed, and is now and has been in actual possession of the same since August, 1893. The property consists of a house and lot on the corner of Woodward and Blaine avenues, with a frontage on Woodward avenue of 88.89 feet, and on Blaine avenue of 200 feet. The value of the premises is admitted to be $10,000 and upward, and they have a rental value of $800 per year. In December, 1892, proceedings were taken by the common council of Detroit for the paving of Woodward avenue; and in March, 1893, the contract was let for paving said avenue from Pallister avenue to the Joy road for the sum of $55,634.78. An assessment roll, in four parts, for the expense of the work of grading and paving, was made by the assessors of the city of Detroit, and the property of complainant was assessed thereunder for the aggregate sum of $491.44. The entire cost and expense of paving Woodward avenue from Pallister avenue to the Joy road, except the cost of the paving of intersections of streets and alleys, was assessed on the property abutting on Woodward avenue between said streets, pro rata, according to the frontage thereof on Woodward avenue. On the 25th day of March, 1897, complainant's property was sold for the taxes so assessed thereon, and was bid off to the city of Detroit for the term of 99 years. Redemption from this sale expired March 25, 1898. The city of Detroit now claims title to said lot under said sale for the said term of 99 years. In February, 1896, proceedings were taken to pave Blaine avenue from Woodward avenue to the Hamilton boulevard, and the paving was contracted for at the sum of $11,462.32. Assessment roll No. 363, for defraying the expense of making improvements and paving Blaine avenue, was

made in four parts, by the assessors of the city of Detroit. The amount assessed against the property of complainant on said lot for said paving was the sum of $442.68. The entire cost and expense of paving Blaine avenue between Woodward avenue and Hamilton boulevard, except the cost of paving the intersection of streets and alleys, was assessed on the property abutting on Blaine avenue between the streets mentioned pro rata according to the frontage thereof on Blaine avenue. It appears from the proofs that complainant's lot has a frontage of 88.89 feet on Woodward avenue, and 200 feet on Blaine avenue, while the other lots on Blaine avenue assessed under said assessment roll for said paving are 127½ feet in depth, and have a frontage varying from 40 to 50 feet. On the 25th day of March, 1897, complainant's lot was sold for the taxes assessed on part 1 of the roll for paving Blaine avenue, and bid off to the city of Detroit for the term of 99 years. On March 28, 1898, the lot was sold for the taxes assessed on part 2 of the roll, and bid off to the city of Detroit for the term of 99 years. On the 19th day of April, 1899, the lot was sold for the taxes assessed on part 3 of said roll, and bid off to the city of Detroit for the term of 99 years. On the 16th day of April, 1900, the property was sold and bid off to the city of Detroit for the term of 99 years. On the first three sales of this lot for the paving of Blaine avenue the period of redemption has expired, and said sales have become absolute, and the city now claims title to said premises thereunder.

The provisions of the charter of the city of Detroit under which said paving was done, and assessment and sales had, are sections 33, 34, 35, and 43 of chapter 11 of the charter of the city of Detroit. Without quoting these at length, it is sufficient to say: That they authorize the common council to enter upon contracts for grading and paving and repaving its streets, and to cause to be assessed the expense of such work upon the lots and real estate made subject to such assessments, excepting the cost of repaving and cost of cross walks, and work at the intersection of cross streets. The lots and parcels of real estate situate on the streets, and fronting the portion ordered to be improved, are declared to constitute one local assessment district, unless subdivided into two or more by the action of the common council; and the cost and expense of such improvement, except for that part of the line for intersection of cross streets and alleys, and the cross walks at such intersections, and for repaving streets, alleys, and highways, shall be assessed ratably according to their extent of frontage on said lots, parts of lots, or parcels of real estate directly fronting on and within the local assessment district. Provision is made for a modification in exceptional cases of the assessment, but this provision has no concern with any feature of this case. The charter definition of the word "front" is as follows:

"Sec. 35. The word 'front' as used in this act shall be construed to mean that part of a lot or property or parcel of land which directly abuts on that part of the street to be improved. The board of assessors are required when necessary to make a list of all the lots or parcels of land constituting the local assessment district, with the name of owner or occupant of each, so far as can be ascertained, and the length of front of each lot or parcel fronting directly

on such improvement, which board shall then assess the cost and expense of the work chargeable as aforesaid upon the property of said lots ratably upon the separate lots and parcels of real estate, according to the length of front thereof. When the assessment roll is thus completed, said board shall give notice by at least five publications in the city papers that such roll is completed, and will remain in their office for twelve days from the first publication of said notice for the inspection of all concerned. At the expiration of said twelve days, said board shall after any needful revision and correction of said roll, sign the same and report it to the common council. Said council may then confirm the same, or may when it shall deem necessary refer the same back to said board for further revision or corrections; and when the same shall be correct to the satisfaction of said council, it shall confirm the same. * * *"

It will be seen from these sections of the charter that the common council is required to assess the entire cost of paving upon the property abutting on the street pro rata according to the foot front of such property, without any reference to the question of benefits. The only notice required to be given to the lot owner is that required to be given by publication in the city newspaper,—that the roll is completed, and will remain in the office of the assessors for the inspection of all concerned. The charter provides no tribunal having any authority to reduce the assessments or to review the amount thereof, except for the purpose of ascertaining that the apportionment of the total expense among the lot owners according to the foot front of their respective properties is mathematically correct, or, in other words, that the aliquot portion of the expense of the improvement has been correctly computed according to the frontage of the land upon the street improved. No provision is made for any hearing as to the extent of the benefit, if any, to the property by the improvement, or whether such benefit equals the assessment made upon the respective parcels of property. A restraining order was issued, and subsequently, upon notice, a hearing was had to the application for a perpetual injunction restraining the city from attempting to enforce the taxes and assessments on which the sales of complainant's premises were based, and from claiming title thereto under said sales. At the same time of the motion for injunction the case came on for hearing upon pleadings and proofs. It is the claim of complainant that the charter, in the provisions mentioned (that the entire cost of the street improvements, except for street and alley crossings, etc., shall be assessed against the abutting property by the fronting measurement, without any regard to the special benefits received by the property, or the relation to the cost of the improvement), is in conflict with the fourteenth amendment of the constitution of the United States, and is null and void; that such legislation constitutes taking of property without just compensation, and is a denial of equal protection of the law. The case of Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, is the foundation for this position, and seems fully to sanction it. Since the decision of that case the question presented has been fully considered in the following cases, among others, all holding that assessments like that here complained of are in conflict with the federal constitution: Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848; Loeb v. Trustees (C. C.) 91 Fed. 37; Fay v. City of Springfield (C. C.) 94 Fed. 409;

Charles v. City of Marion (C. C.) 98 Fed. 166; Charles v. City of Marion (C. C.) 100 Fed. 538; Lyon v. Town of Tonawanda (C. C.) 98 Fed. 361; Cowley v. City of Spokane (C. C.) 99 Fed. 840,—and has been so well discussed by Judges Baker, Coxe, Thompson, Hanford, and Phillips as to leave little, if anything, to be said in support of their conclusions. The supreme court of Michigan has declined to depart from its decisions sustaining the constitutionality of like statutes providing for assessments per foot front, on the ground that the ruling in Baker v. Village of Norwood must be confined to the facts of that case, and has no application to an assessment for paving. With all respect for that learned tribunal, I am constrained, under the cases cited, to a different opinion of the decision, and to follow the supreme court of the United States upon the construction of the fourteenth amendment of the federal constitution. A decree, therefore, will be entered in accordance with the prayer of the bill, and a perpetual injunction will issue as prayed.